# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

(1)  **ROBERT DRAPER;**

(2)  **ARIEL WEISBERG;**

(3)  **DONNA MAJOR;**

(4)  **ERIC NOTKIN;**

(5)  **ROBERT BOUDRIE;**

(6)  **BRENT CARLTON,**

    *collectively, the*
       **"CONSUMERS"**, *and*

(7)  **CONCORD ARMORY, LLC;**

(8)  **PRECISION POINT FIREARMS, LLC;**

    *collectively, the*
       **"DEALERS"**, *and*

(9)  **SECOND AMENDMENT FOUNDATION, INC.,**

(10) **COMMONWEALTH SECOND AMENDMENT, INC.**

    *collectively, the*
       **"ORGANIZATIONS"**, *and*

               Plaintiffs

  v.

**MARTHA COAKLEY,**

    *in her official capacity as*
    **ATTORNEY GENERAL OF MASSACHUSETTS**

               Defendant

Civil Action No.

# 1:14-CV-12471

# COMPLAINT

# FOR DECLARATORY AND INJUNCTIVE RELIEF

# (42 U.S.C. §1983)

Individual plaintiffs **ROBERT DRAPER**;  **ARIEL WEISBERG**;  **DONNA MAJOR**;  **ERIC NOTKIN**;    **ROBERTY BOUDRIE** and **BRENT CARLTON** (collectively  hereafter  the "CONSUMERS"), business entities **CONCORD ARMORY, LLC** and **PRECISION POINT ARMORY, LLC** (collectively  hereafter  the  "DEALERS"),  ,  and  non-profit  organizations  **SECOND AMENDMENT  FOUNDATION,  INC.** and **COMMONWEALTH  SECOND  AMENDMENT,  INC.** (collectively  hereafter  the  "ORGANIZATIONS")  by  and  through  their  attorney  complain  of defendant **MARTHA  COAKLY** in  her  official  capacity  as  the  **ATTORNEY  GENERAL  OF MASSACHUSETTS** (hereafter "ATTORNEY GENERAL), as follows:

# **INTRODUCTION**

**1.**     This lawsuit is a 42 U.S.C. §1983 action seeking declaratory and injunctive relief from the Massachusetts <u>Handgun Sales Regulation's</u> (940 C.M.R. §16.00, *et seq*.) deprivation of Massachusetts firearms dealers' 14th Amendment right to due process and the infringement on Massachusetts consumers' Second Amendment rights.

**2.**     The <u>Handgun Sales Regulation</u> at 940 C.M.R. §16.05(3) is ***facially void*** for its use of the unconstitutionally  vague  and  ambiguous  word  "device"  to  define  the  "load  indicator" alternative design requirement for handguns sold or transferred to Massachusetts consumers. Other than specifying what this load indicator "device" is intended to ***do***—i.e. "plainly indicate[] that  a  cartridge  is  in  the  firing  chamber  within  the  handgun"—there  is  nothing  in  the Regulation indicating ***how*** this "device" is to provide that "plain[] indicat[ion]", i.e. visually, tactilely, passively, actively, etc.;  what this "device" actually ***is***, i.e. a button, tab, notch, hole, etc.;  ***where*** on the handgun this "device" must be located, i.e. on the slide, on the frame, on the trigger, right/left/top, bottom, breach/muzzle, etc., nor is the size, any dimension, color, shape or anything else specified anywhere in the <u>Handgun Sales Regulation</u>.   The DEALERS are deprived of due process because the vague and ambiguous word "device" does not permit them to  determine  which  handguns  comply  with  the  REGULATION  and  which  do  not,  thereby exposing them to enforcement actions by the defendant ATTORNEY GENERAL.

**3.**     The <u>Handgun Sales Regulation</u> at 940 C.M.R. §16.05(3) is ***void as applied*** to the DEALERS and CONSUMERS because the defendant ATTORNEY GENERAL has concluded, without explanation or elucidation, that 3rd and 4th generation Glock pistols which the CONSUMERS wish to purchase and which the DEALERS wish to sell, lack an "effective load indicator" device.   The defendant ATTORNEY GENERAL has not explained how or why she came to that conclusion.   Indeed, she refuses to provide any such explanation or guidance, while making no objection to the use of virtually identical load indicator "devices" on other handgun makes and models sold throughout Massachusetts.

**4.**     The unconstitutionally vague and ambiguous "load indicator" design requirement of the <u>Handgun Sales Regulation</u> and the Attorney General's capricious conclusion that 3rd and 4th generation Glock pistols lack an "effective load indicator" device have prevented the DEALERS and CONSUMERS from engaging in purchase and sale transactions of firearms in common use (i.e. Glock pistols) thereby directly infringing on the CONSUMERS' core fundamental rights protected by the Second Amendment.

# PARTIES AND JURISDICTION

## A.   The "DEALERS"

**5.**     The following two (2) business entities are collectively referred to herein as the "**DEALERS**".

    **5.1.**   **Precision Point Firearms, LLC** (hereafter "PRECISION") is a Massachusetts limited liability company with a principal place of business in Woburn, Massachusetts. PRECISION is duly licensed by the Bureau of Alcohol, Tobacco, Firearms and Explosives (hereafter "BATFE") as a "Federal Firearms Licensee" (commonly referred to as an "FFL") and by the Commonwealth of Massachusetts Executive Office of Public Safety and Security (hereafter "EOPSS") as a Massachusetts firearms dealer.

**5.2.    Concord Armory, LLC** (hereafter "CONCORD") is a Massachusetts limited liability company with a principal place of business in Concord, Massachusetts. CONCORD is duly licensed by BATFE as an FFL and by EOPSS as a Massachusetts firearms dealer.

## B.    The "CONSUMERS"

**6.**    The following list of six (6) individuals are collectively referred to herein as the "**CONSUMERS**":

**6.1.    Robert Draper** (hereafter "DRAPER") is a resident of Framingham, Massachusetts, and is duly licensed to acquire and own firearms in Massachusetts.

**6.2.    Ariel Weisberg** (hereafter "WEISBERG") is a resident of Stoneham, Massachusetts, and is duly licensed to acquire and own firearms in Massachusetts.

**6.3.    Donna Major** (hereafter "MAJOR") is a resident of Boston, Massachusetts, and is duly licensed to acquire and own firearms in Massachusetts.

**6.4.    Eric Notkin** (hereafter "NOTKIN") is a resident of Canton, Massachusetts, and is duly licensed to acquire and own firearms in Massachusetts.

**6.5.    Robert Boudrie** (hereafter "BOUDRIE") is a resident of Natick, Massachusetts, and is duly licensed to acquire and own firearms in Massachusetts.

**6.6.    Brent Carlton** (hereafter "CARLTON") is a resident of Boston, Massachusetts, and is duly licensed to acquire and own firearms in Massachusetts.

## C.    The "ORGANIZATIONS"

**7.**    The following two (2) non-profit organizations are collectively referred to herein as the "**ORGANIZATIONS**":

**7.1.    Second Amendment Foundation, Inc.** (hereafter "SAF") is a non-profit membership organization incorporated under the laws of the State of Washington with its principal place of business in Bellevue, Washington.  SAF has over 600,000 members and supporters nationwide, including thousands in Massachusetts.   SAF's purposes

include education, research, publishing and legal action regarding the fundamental Constitutional right to the private ownership and possession of firearms. SAF represents itself and its members in this lawsuit.

**7.2.** **Commonwealth Second Amendment, Inc.** (hereafter "COMM2A") is a non-profit organization incorporated under the laws of the Commonwealth of Massachusetts with its principal place of business in Natick, Massachusetts. COMM2A has supporters throughout the Commonwealth. COMM2A's purposes include educational programs and legal action regarding the fundamental Constitutional right to the private ownership and possession of firearms guaranteed by the Second Amendment. COMM2A represents itself and its supporters in this lawsuit.

**8.** Jurisdiction for this lawsuit is founded on 28 U.S.C. § 1331 in that this action arises under the Constitution and laws of the United States, and under 28 U.S.C. § 1343(3) in that this action seeks to redress the deprivation, under color of the laws, statute, ordinances, regulations, customs, and usages of the Commonwealth of Massachusetts of rights, privileges and/or immunities secured by the United States Constitution and by Acts of Congress. Furthermore, his lawsuit seeks relief pursuant to 28 U.S.C. §§ 2201-2202 and 42 U.S.C. § 1983.

**9.** Venue lies in this District pursuant to 28 U.S.C. § 1391.

## STATURY AND REGULATORY CONTEXT

**10.** Unlike federal law, Massachusetts state law does not provide a separate definition of "handgun". Instead, Massachusetts state law at M.G.L. c140 §121 groups handguns with all "firearms" having a barrel length of less than 16 inches:

> "Firearm", a pistol, revolver or other weapon of any description, loaded or unloaded, from which a shot or bullet can be discharged and of which the length of the barrel or barrels is less than 16 inches or 18 inches in the case of a shotgun as originally manufactured...

## A.  The Constitution's Fourteenth Amendment Due Process Clause and its Application to Ambiguous Regulations

**11.**    The <u>Fourteenth Amendment</u> to the United States Constitution provides, *inter alia*:  "No state shall … deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

**12.**    The United States Supreme Court summarized the law of "void-for-vagueness" regulations in <u>FCC v. Fox Television Stations</u>, 567 U.S. __, 132 S.Ct. 2307 (2012) (quoted verbatim in the following shaded text):

> A fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required.  *See* <u>Connally v. General Constr. Co.</u>, 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926) ("[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law"); <u>Papachristou v. Jacksonville</u>, 405 U.S. 156, 162, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972) ("Living under a rule of law entails various suppositions, one of which is that '[all persons] are entitled to be informed as to what the State commands or forbids;'" (quoting <u>Lanzetta v. New Jersey</u>, 306 U.S. 451, 453, 59 S.Ct. 618, 83 L.Ed. 888 (1939) (alteration in original))).  This requirement of clarity in regulation is essential to the protections provided by the Due Process Clause of the Fifth Amendment.  *See* <u>United States v. Williams</u>, 553 U.S. 285, 304, 128 S.Ct. 1830, 170 L.Ed.2d 650 (2008).  It requires the invalidation of laws that are impermissibly vague….  ¶ Even when speech is not at issue, the void for vagueness doctrine addresses at least two connected but discrete due process concerns:  first, that regulated parties should know what is required of them so they may act accordingly;  second, precision and guidance are necessary so that those enforcing the law do not act in an arbitrary or discriminatory way.  *See* <u>Grayned v. City of Rockford</u>, 408 U.S. 104, 108-109, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972).

**13.**    "When an agency interprets its own regulation, the Court, as a general rule, defers to it 'unless that interpretation is "plainly erroneous or inconsistent with the regulation."'"  Decker v. Northwest Environmental Defense Center, __ U.S. __, 133 S. Ct. 1326, (2013), citing Chase Bank USA, N. A. v. McCoy, 562 U. S. _ , __ (2011) quoting Auer v. Robbins, 519 U. S. 452, 461(1997).

**14.**     In <u>Christopher v. Smithkline Beecham Corp.</u>, 567 U.S. __, 132 S. Ct. 2156, (2012) the United States Supreme Court explained the limits of "Auer deference" (quoted verbatim in the following shaded text):

> Although <u>Auer</u> ordinarily calls for deference to an agency's interpretation of its own ambiguous regulation, even when that interpretation is advanced in a legal brief, *see* <u>Chase Bank USA, N.A. v. McCoy</u>, 562 U.S. __, __, 131 S.Ct. 871, 880, 178 L.Ed.2d 716 (2011);  <u>Auer</u>, 519 U.S., at 461-462, 117 S.Ct. 905, this general rule does not apply in all cases.  Deference is undoubtedly inappropriate, for example, when the agency's interpretation is "'plainly erroneous or inconsistent with the regulation.'"  <u>Id.</u>, at  461, 117  S.Ct.  905 (quoting <u>Robertson v. Methow Valley Citizens Council</u>, 490 U.S. 332, 359, 109 S.Ct. 1835, 104 L.Ed.2d 351 (1989)).  And deference is likewise unwarranted when there is reason to suspect that the agency's interpretation "does not reflect the agency's fair and considered judgment on the matter in question."  <u>Auer</u>, *supra*, at 462, 117 S.Ct. 905;  *see* also, *e.g.*, <u>Chase Bank</u>, *supra*, at __, 131 S.Ct. at 881.  This might occur when the agency's interpretation conflicts with a prior interpretation, *see*, *e.g.*, <u>Thomas Jefferson Univ. v. Shalala</u>, 512 U.S. 504, 515, 114 S.Ct. 2381, 129 L.Ed.2d 405 (1994), or when it appears that the interpretation is nothing more than a "convenient litigating position," <u>Bowen v. Georgetown Univ. Hospital</u>, 488 U.S. 204, 213, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988), or a "'post hoc rationalizatio[n]' advanced by an agency seeking to defend past agency action against attack," <u>Auer</u>, *supra*, at 462, 117 S.Ct. 905 (quoting <u>Bowen</u>, 2167*2167 *supra*, at 212, 109 S.Ct. 468;  alteration in original).

## B.  The Application and Extent of the Protections of the <u>Second Amendment to the United States Constitution</u>

**12.**     The <u>Second Amendment</u> to the United States Constitution proclaims:   "A WELL REGULATED MILITIA, BEING NECESSARY TO THE SECURITY OF A FREE STATE, THE RIGHT OF THE PEOPLE TO KEEP AND BEAR ARMS, SHALL NOT BE INFRINGED."

**13.**     In <u>District of Columbia v. Heller</u>, 554 U.S. 570 (2008), the United States Supreme Court held that:

> **13.1.**  "The Second Amendment protects an individual right to possess a firearm unconnected with service in a militia, and to use that firearm for traditionally lawful purposes, such as self-defense within the home."  <u>Id.</u>, 576-626.

**13.2.**   The Second Amendment's protection of an individual right to possess firearms applies to "the type of weapon [ ] used by the militia, *i.e.,* those in common use for lawful purposes." Id., 576-626.

**14.**   "Unless considerations of *stare decisis* counsel otherwise, a provision of the Bill of Rights that protects a right that is fundamental from an American perspective applies equally to the Federal Government and the States," and therefore "the Due Process Clause of the Fourteenth Amendment incorporates the Second Amendment right recognized in Heller." McDonald v. Chicago, 561 U.S. 3025, 3046 (2010).

**15.**   A law that "threatens to inhibit the exercise of constitutionally protected rights" demands that "a more stringent vagueness test should apply." Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 498-99 (1982).

## C.   The Federal Statutory Framework for Retail Sales and Interstate Transfers of Firearms

**16.**   Federal law at 18 U.S.C. 923(a) requires that any person who "engage[s] in the business of … dealing in firearms…" be licensed to do so by the Attorney General of the United States. Such a licensed firearms dealer is generally known as a "Federal Firearms Licensee", or is more commonly referred to as an "FFL".

**17.**   A non-FFL (i.e. a consumer) may purchase a handgun at retail only within the consumer's own state.  18 U.S.C. 922(a)(3) and (5), 922(b)(3).

**18.**   A non-FFL (i.e. a consumer) may purchase or otherwise acquire a handgun from an out-of-state source **only if** the handgun is shipped to an FFL in the purchasing consumer's state of residence, **and** the purchasing consumer also takes delivery of the handgun from the FFL in the purchasing consumer's state of residence.  18 U.S.C. 922(a)(3) and (5), 922(b)(3).

**19.**   Thus, per federal law, a Massachusetts consumer wishing to acquire a handgun at retail in Massachusetts, or at retail or through a private party transaction outside of Massachusetts, must take delivery of that handgun in Massachusetts from an FFL whose **licensed premises are located in Massachusetts**.

### D.  The Massachusetts *Two Layer* Statutory and Regulatory Scheme for Retail Sales and Transfers of Handguns

**20.**     Massachusetts firearms dealers who sell and/or transfer handguns to Massachusetts consumers may offer for sale or transfer to eligible Massachusetts residents only those handguns that comply with **two independent standards**:  (1)  M.G.L. c.140 §123 (hereafter the "STATUTE"), **and** (2)  the Massachusetts Attorney General's <u>Handgun Sales Regulation</u> codified at 940 CMR 16.00, *et seq.* (hereafter the "REGULATION").

**21.**     Massachusetts firearms dealers may not sell or transfer any handgun into Massachusetts that does not comply with <u>***both***</u> the STATUTE and the REGULATION.

### The **STATUTORY** <u>Handgun Design and Performance Requirements</u>

**22.**     Subsections 18 through 21 of the STATUTE prohibit the sale of handguns in Massachusetts which do not comply with specific design or performance criteria (subsections 18, 20 and 21), <u>*and*</u> which have not passed a "drop test" (subsection 19).

**23.**     The STATUTE at Section 131¾ (with certain exceptions, none of which are pertinent to the issues in this Complaint) requires that the Executive Office of Public Safety and Security ("EOPSS") periodically publish a list of handguns passing the requirements of the STATUTE. The enabling regulation at 501 CMR 7.00, *et seq.* provides further criteria for such conforming firearms to be included on this list known as the <u>Approved Firearms Roster</u>.

**24.**     The inclusion of a handgun make and model on the <u>Approved Firearms Roster</u> means that it is fully compliant with the requirements of the STATUTE.  A copy of the current (as of the date of this Complaint) <u>Approved Firearms Roster</u> is attached hereto as **Exhibit "1"**.

**25.**     The current <u>Approved Firearms Roster</u> (**Exhibit "1"**) at page 1 at paragraph 3 provides the an admonition to Massachusetts licensed firearms dealers (quoted verbatim in the following shaded text) that inclusion of a handgun make and model on the <u>Approved Firearms Roster</u> does not necessarily mean that that handgun make and model also complies with the Attorney General's <u>Handgun Sales Regulation</u>:

Massachusetts licensed firearms dealers should note that the transfers of handguns are also subject to the Attorney General's Handgun Sales Regulations, 940 CMR 16.00, et seq.   Firearms on this Approved Firearms Roster do not necessarily comply with the requirements of the Attorney General's Handgun Sales Regulations.   Information about those regulations, as well as the Enforcement Notice may be obtained from the Office of the Attorney General and may be accessed on the website of the Attorney General (www.ago.state.ma.us).

## The *REGULATORY*
### Handgun Design and Performance Requirements

**26.**   The Massachusetts Attorney General's Handgun Sales Regulation codified at 940 CMR 16.00, *et seq*. also contains handgun design requirements, most of which overlap with those of the STATUTE and some of which do not.

**27.**   The REGULATION at §16.01 defines a "handgun-purveyor" (with certain exceptions, none of which are applicable to the issues in this lawsuit) as "any person or entity that transfers handguns to a customer located within the Commonwealth of Massachusetts."

> **27.1.**   Pursuant to M.G.L. c.140 §§ 122, 123 and 124, a "handgun-purveyor" is a Massachusetts licensed firearms dealer.

> **27.2.**   Per EOPSS' explicit instructions, one "must have a federal firearms license in order to obtain and hold a state firearms dealer license." (*See* **Exhibit "2"** at p. 1.)

> **27.3.**    Thus, per the REGULATION, a "handgun-purveyor" is necessarily both an FFL and a Massachusetts licensed firearms dealer.

**28.**   The REGULATION at §16.01 defines a "load indicator" as "a device which plainly indicates that a cartridge is in the firing chamber within the handgun."

**29.**   The REGULATION at §16.05(3) provides (with very limited exception) that:

> "It shall be an unfair or deceptive practice for a handgun-purveyor to transfer or offer to transfer to any customer located within the Commonwealth any handgun which does not contain a load indicator or magazine safety disconnect."

**30.**   The REGULATION at §16.05(4) states that the "load indicator" alternative design requirement of §16.05(3) "applies only to handguns that have a mechanism to load cartridges

via a magazine." Thus, the § 16.05(3) "load indicator" alternative design requirement applies only to semi-automatic pistols but not to revolvers of any kind, nor to single-shot handguns.

**31.** The REGULATION at §16.09(3) provides that §16.05 applies to "acts committed or practices in force as of September 30, 1998."

**32.** The enabling statute for the <u>Handgun Sales Regulation</u> is Chapter 93A of the Massachusetts General Laws, commonly known as the "Consumer Protection Act". Violation of Chapter 93A exposes the violator to double or treble damages and reimbursement of attorney fees. M.G.L. c.93A §9(3A).

# **FACTS**

## A. <u>Glock, Inc.</u>

**33.** Glock, Inc., located in Smyrna, Georgia, is a manufacturer of semi-automatic handguns.

    **33.1.** As of the April version of the <u>Listing of Federal Firearms Licensees (FFLs) – 2014</u> published monthly by the BATFE, Glock, Inc. holds a Type 07 FFL (firearm manufacturer license) tied to its address at 6000 Highlands Parkway, Smyrna, Georgia 30082.[1] It also holds a Type 08 FFL (firearm importer license) tied to its address at 6000 Highlands Parkway, Smyrna, Georgia 30082.

    **33.2.** As of the April version of the <u>Listing of Federal Firearms Licensees (FFLs) – 2014</u> published online by the BATFE, Glock Professional, Inc. holds a Type 01 FFL (firearm dealer) tied to its address at 5300 Highlands Parkway, Smyrna, Georgia 30082. Glock Professional, Inc. is Glock, Inc.'s training affiliate which provides professional training to law enforcement, military, licensed security and other personnel.

    **33.3.** Neither Glock, Inc. nor Glock Professional, Inc. maintains any type of FFL in the Commonwealth of Massachusetts. [*See* footnote 1.] Thus, pursuant to federal law at 18 U.S.C. 922(a), *et seq.*, **neither Glock, Inc. nor Glock Professional, Inc. may sell or transfer any firearm to a Massachusetts consumer**.

---

[1] https://www.atf.gov/content/firearms/firearms-industry/listing-FFLs

## B.   <u>Glock Handguns</u>

**34.**   Since their introduction to the U.S. market in 1984, Glock handguns have enjoyed enormous popularity in Massachusetts and throughout the country due to their widely reputed quality, reliability and ability to function under adverse conditions.

**34.1.**   Glock handguns are prized for their reliability and accuracy by competitive shooters.  They almost invariably dominate the list of production handguns used in most popular national and international sport shooting competitions.

    **A.**   At the USPSA (United States Practical Shooting Association) Production National Championships, Glock pistols accounted for 56.84% of all pistols used in the 2005 competition;  55.12% of pistols used in the 2006 competition;  57.94% of pistols in the 2007 competition;   51.59% of pistols used in the 2008 competition, and 49.26% of all pistols used in the 2009 competition.

    **B.**   Glock pistols accounted for more than 37% of the handguns in the inaugural IDPA (International Defensive Pistol Association) World Shoot in 2011, among the 28 handgun manufacturers' handguns used by competitors there.

**34.2.**   Glock handguns are extremely popular self-defense firearms because of their simplicity and reliability, contributing to the fulfillment of the central purpose of the Second Amendment right.

    **A.**   Glock enjoys an amazing 65% market share of all handguns used by law enforcement agencies throughout the United States, from local police departments to the BATFE itself.

    **B.**   Many Massachusetts police departments issue Glock pistols to their officers as duty firearms.

**35.**   Like many popular handgun manufacturers, Glock offers a variety of handguns models.

**35.1.**   Glock handgun models are distinguished primarily by their size and the caliber of ammunition they use.

**35.2.**   Otherwise, with few exceptions, all Glock pistol models are nearly identical in design;  they are scaled up or scaled down versions of the same pistol.  Glock, Inc.

markets the fact that "A significant level of interchangeability applies to the internal component parts of the different GLOCK pistol models."[2]

**36.**   Glock handguns have undergone several design improvements since their introduction in the mid-1980s, with major model changes known as "Generations" (referred to conventionally as "Gen#" with the "#" symbol substituted for the generation number).

    **36.1.**   First Generation (i.e. "Gen1") Glock handguns were introduced to the U.S. market in 1984.[3]

    **36.2.**   Second Generation (i.e. "Gen2") Glock handguns were introduced in 1988.

    **36.3.**   Third Generation (i.e. "Gen3") Glock handguns were introduced in 1998.

    **36.4.**   Fourth Generation (i.e. "Gen4") Glock handguns were introduced in 2010.  Gen4 pistols improved upon the already legendary durability of earlier generation pistols. Gen4 pistols also reduced felt recoil, thereby making them even easier to handle than earlier generation pistols.

**37.**   All Glock handguns are semi-automatic pistols employing box magazines as feeding devices for cartridges.

    **37.1.**   Thus, to be offered for sale or transfer to Massachusetts consumers by handgun purveyors (as they are defined by the REGULATION), Glock handguns must comply with the design requirements of ***both*** M.G.L. c.140 §123 (the STATUTE) and the Massachusetts <u>Handgun Sales Regulation</u> (the REGULATION).

## B.   Virtually <u>ALL</u> Production (consumer oriented) Gen3 and <u>Gen4 Glock Pistols Comply with the STATUTE</u>

**38.**   Virtually ALL production Gen3 and Gen4 Glock handguns (those that are not designed and sold strictly to law enforcement, military and/or government agencies) comply with the handgun design and performance requirements of the STATUTE, and are therefore included on

---

[2]   [Source:  http://us.glock.com/technology]

[3]   Glock pistols were conceived in 1982 and initially produced in Austria by GLOCK Ges.m.b.H. for the Austrian Army.  The first Glock subsidiary in the United States was formed in 1985.

the Approved Firearms Roster compiled by the Executive Office of Public Safety and Security pursuant to M.G.L. c.140, § 131¾ and 501 CMR 7.00.[4]  [*See* **Exhibit "1"** attached hereto.]

## C. Each of the CONSUMERS Sought to Purchase Gen3 or Gen4 Glock Pistols from the DEALERS

**39.**   CONSUMER DRAPER attempted to purchase a Gen4 Model 17 Glock pistol.

   **39.1.**   On 16 April 2014, CONSUMER DRAPER e-mailed DEALER CONCORD seeking to purchase a new Gen4 Model 17 Glock pistol.  [*See* **Exhibit "3"** attached hereto.]

   **39.2.**   DRAPER is a licensed Massachusetts firearm owner.  He retired from the Railroad Police at the rank of Lieutenant after 33 years of service.  DRAPER was a military police officer in the U.S. Air Force for four years.  Draper is a member of and is currently involved in training activities for the Massachusetts Law Enforcement Firearms Instructors and Armorers Association ("MLEFIAA").  He is a Glock Certified Armorer, a Massachusetts State Police and National Rifle Association (hereafter "NRA") certified basic firearms safety instructor and a competitive shooter.  DRAPER sought to purchase a Gen4 Model 17 Glock pistol for competitive shooting and self-defense purposes.

**40.**   CONSUMER WEISBERG attempted to purchase a Gen4 Model 34 Glock pistol.

   **40.1.**   On 22 April 2014, CONSUMER WEISBERG e-mailed DEALERS CONCORD and PRECISION seeking to purchase a Gen4 Model 34 Glock pistol.  [*See* **Exhibit "4"** attached hereto.]

   **40.2.**   WEISBERG is a licensed Massachusetts firearm owner.  He has been involved in the shooting sports for approximately nine years and competes in the U.S. Practical Shooting Association's (hereafter "USPSA") competitions.  WEISBERG is a Massachusetts State Police certified basic firearms safety instructor, an NRA certified basic pistol and home firearm safety instructor, and a National Range Officers Institute ("NROI") Range

---

[4]   Two production Glock handgun (Models 25 and 28) are not on the Approved Firearms Roster because ***federal law*** enacted in 1968 prohibits their import into the U.S.  Glock production handgun models 41 and 42 were introduced in early 2014 and have not yet completed EOPSS' performance evaluations.  The Glock model 18 pistol is a ___selective fire___ handgun (capable of fully automatic fire) and has never been available to the consumer market—it is available ***only*** to law enforcement and military agencies, and is ***not*** the subject of his complaint.

Officer 4.  WEISBERG has been a software engineer for about 10 years.  WEISBERG sought to purchase a Gen4 Model 34 Glock pistol for competitive shooting and self-defense purposes.

**41.**     CONSUMER MAJOR attempted to purchase a Gen4 Glock pistol.

**41.1.**  On 22 April 2014, CONSUMER MAJOR e-mailed DEALERS **CONCORD** and **PRECISION** seeking to purchase or have transferred a Gen4 Glock pistol.  [*See* **Exhibit "5"** attached hereto.]

**41.2.**  MAJOR is a licensed Massachusetts firearm owner.  She has been involved in the shooting sports for approximately 12 years.  MAJOR has been a Massachusetts State Police certified basic firearms safety instructor for 10 years, is an NRA certified basic pistol instructor, and has been an NROI Range Officer for about four years.  MAJOR shoots competitively at USPSA competitions and was a founding member of Boston Urban Action Shooter, a USPSA-affiliated club.  MAJOR has been an MRI staff technologist at a major Boston teaching hospital for approximately 24 years.  MAJOR sought to purchase a Gen4 Glock 17 pistol for competitive shooting and self-defense purposes.

**42.**     CONSUMER NOTKIN attempted to purchase a Gen3/Gen4 Glock pistol.

**42.1.**  On 1 June 2014, CONSUMER NOTKIN e-mailed DEALERS CONCORD and PRECISION seeking to purchase new Gen3 or Gen4 Model 17 Glock pistol.  [*See* **Exhibit "6"** attached hereto.]

**42.2.**   NOTKIN is a licensed Massachusetts firearm owner.  He has been involved in the shooting sports for at least 48 years and shoots competitively.   NOTKIN is a Massachusetts State Police certified basic firearms safety instructor and an NRA certified basic pistol instructor.   NOTKIN has been a perioperative (surgical, operating room) nurse at a major Boston medical center for approximately 22 years.  NOTKIN sought to purchase a Gen3/Gen4 Model 17 Glock pistol for competitive shooting and self-defense purposes.  [*See* **Exhibit "8"** attached hereto.]

**43.**     CONSUMER BOUDRIE attempted to purchase a Gen4 Model 34 Glock pistol.

**43.1.** On 19 April 2014, CONSUMER BOUDRIE e-mailed DEALERS CONCORD and PRECISION, seeking to purchase a Gen4 Model 34 Glock pistol.   [*See* **Exhibit "7"** attached hereto.]

**43.2.** BOUDRIE is a licensed Massachusetts firearm owner.  He is a Glock Certified Armorer, an Armalite certified armorer, a Massachusetts State Police certified basic firearms safety instructor for more than 12 years, an NRA certified basic pistol instructor for more than 21 years, and a USPSA practical handgun competitor.  BOUDRIE served as a director of the USPSA and is a technology consultant to three firearms manufacturers.  BOUDRIE has worked in the computer and high technology industry for 30 years and is currently employed as a consulting engineer for a Fortune 500 technology firm.   BOUDRIE sought to purchase a Gen4 Model 34 Glock pistol for competitive shooting and self-defense purposes.  [*See* **Exhibit "8"** attached hereto.]

**44.** CONSUMER CARLTON attempted to purchase a Gen4 Model 34 Glock pistol.

**44.1.** On 16 April 2014, CONSUMER CARLTON e-mailed DEALERS CONCORD and PRECISION seeking to purchase a Gen4 Model 34 Glock pistol.  [*See* **Exhibit "8"** attached hereto.]

**44.2.** CARLTON is a licensed Massachusetts firearm owner.  He is a Massachusetts State Police certified basic firearms safety instructor, an NRA certified basic pistol instructor, an NRA certified Range Safety Officer, a SigSauer certified Armorer, a USPSA competitor and Range Officer.  CARLTON has worked for software and technology companies in a services management role and is a partner in a CRM technology consulting firm.  CARLTON sought to purchase a Gen4 Model 34 Glock pistol for competitive shooting and self-defense purposes.  [*See* **Exhibit "8"** attached hereto.]

## D.  All of the DEALERS Declined or Refused to Sell or Transfer Gen3 or Gen4 Glock Pistols to the CONSUMERS

**45.** On 16 April 2014, DEALER CONCORD sent CONSUMER DRAPER an e-mail declining to sell DRAPER the Glock pistol he requested to purchase.  [*See* **Exhibit "9"** attached hereto.]

**46.**     On 16 April 2014 and 19 April 2014, respectively, DEALERS CONCORD and PRECISION each sent CONSUMER WEISBERG e-mails declining to sell WEISBERG the Glock pistol he requested to purchase.  [*See* **Exhibit "10"** attached hereto.]

**47.**     On 29 April 2014, DEALER PRECISION sent CONSUMER MAJOR an e-mail declining to sell MAJOR the Glock pistol she requested to purchase.  [*See* **Exhibit "11"** attached hereto.]

**48.**     On 1 June 2014 and 2 June 2014, respectively, DEALERS CONCORD and PRECISION each sent CONSUMER NOTKIN an e-mail declining to sell NOTKIN the Glock pistol he requested to purchase.  [*See* **Exhibit "12"** attached hereto.]

**49.**     On 22 April 2014 DEALER PRECISION sent CONSUMER BOUDRIE an e-mail declining to sell BOUDRIE the Glock pistol he requested to purchase.  [*See* **Exhibit "13"** attached hereto.]

**50.**     On 16 April 2014 and 21 April 2014, respectively, DEALERS CONCORD and PRECISION each sent CONSUMER CARLTON e-mails declining to sell CARLTON the Glock pistol he requested to purchase.  [*See* **Exhibit "14"** attached hereto.]

### E.   The DEALERS Declined to Sell Gen3/ Gen4 Glock Pistols to the CONSUMERS Because the DEALERS did NOT Know <u>Whether These Pistols Comply with the REGULATION</u>

**51.**     DEALER CONCORD rejected to sell or transfer the Gen3 and Gen4 Glock pistols that CONSUMERS DRAPER, WEISBERG, NOTKIN and CARLTON sought to purchase from CONCORD because CONCORD did not know whether Gen3 and Gen4 Glock pistols comply with the REGULATION.  [*See* **Exhibits "9"**, **"10"**, **"12"** and **"14"** attached hereto.]

**52.**     DEALER PRECISION rejected to sell or transfer the Gen3 and Gen4 Glock pistols that CONSUMERS WEISBERG, MAJOR, NOTKIN, BOUDRIE and CARLTON sought to purchase from PRECISION because PRECISION did not know whether Gen3 and Gen4 Glock pistols comply with the REGULATION.  [*See* **Exhibits "10"**, **"11"**, **"12"**, **"13"** and **"14"** attached hereto.]

///

**F. The DEALERS and CONSUMERS Sought Clarification Directly from the Defendant ATTORNEY GENERAL Whether Gen3 and/or Gen4 Glock Pistols Comply with <u>the REGULATION, and if Not, Why Not</u>**

**53.** On 3 December 2013, DEALER CONCORD wrote to the defendant ATTORNEY GENERAL asking her to clarify whether Gen3 and/or Gen4 Glock pistols comply with the REGULATION, and if not, why not.  [*See* **Exhibit "15"** attached hereto.]

**54.** On 16 May 2014, DEALER PRECISION wrote to the defendant ATTORNEY GENERAL asking her to clarify whether Gen3 and/or Gen4 Glock pistols comply with the REGULATION, and if not, why not.  [*See* **Exhibit "16"** attached hereto.]

**55.** On 28 April 2014, CONSUMER DRAPER wrote to the defendant ATTORNEY GENERAL asking her to clarify whether Gen3 and/or Gen4 Glock pistols comply with the REGULATION, and if not, why not.  [*See* **Exhibit "17"** attached hereto.]

**56.** On 28 April 2014, CONSUMER WEISBERG wrote to the defendant ATTORNEY GENERAL asking her to clarify whether Gen3 and/or Gen4 Glock pistols comply with the REGULATION, and if not, why not.  [*See* **Exhibit "18"** attached hereto.]

**57.** On 16 May 2014, CONSUMER MAJOR wrote to the defendant ATTORNEY GENERAL asking her to clarify whether Gen3 and/or Gen4 Glock pistols comply with the REGULATION, and if not, why not.  [*See* **Exhibit "19"** attached hereto.]

**58.** On 22 April 2014, CONSUMER NOTKIN wrote to the defendant ATTORNEY GENERAL asking her to clarify whether Gen3 and/or Gen4 Glock pistols comply with the REGULATION, and if not, why not.  [*See* **Exhibit "20"** attached hereto.]

**59.** On 24 April 2014, CONSUMER BOUDRIE wrote to the defendant ATTORNEY GENERAL asking her to clarify whether Gen3 and/or Gen4 Glock pistols comply with the REGULATION, and if not, why not.  [*See* **Exhibit "21"** attached hereto.]

**60.** On 28 April 2014, CONSUMER CARLTON wrote to the defendant ATTORNEY GENERAL asking her to clarify whether Gen3 and/or Gen4 Glock pistols comply with the REGULATION, and if not, why not.  [*See* **Exhibit "22"** attached hereto.]

## G.  Defendant ATTORNEY GENERAL'S Dismissive Responses to the CONSUMERS' and the DEALERS' Inquiries Whether Gen3 and/or Gen4 Glock Pistols Comply with the **REGULATION, and if Not, Why Not**

**61.**    On 2 April 2014, defendant **ATTORNEY GENERAL** responded to DEALER CONCORD'S request for clarification of whether Gen3 and/or Gen4 Glock pistols comply with the REGULATION by stating:  "If you are unsure whether a handgun on the EOPS (sic) roster meets the additional safety requirements of our Office's regulations, you should contact the manufacturer, who should be able to provide you with that information."   [*See* **Exhibit "23"** attached hereto.]

**62.**    On 21 May 2014, defendant **ATTORNEY GENERAL** responded to DEALER PRECISION'S request for clarification of whether Gen3 and/or Gen4 Glock pistols comply with the REGULATION by stating:  "If you are unsure whether a handgun on the EOPS (sic) roster meets the additional safety requirements of our Office's regulations, you should contact the manufacturer, who should be able to provide you with that information."   [*See* **Exhibit "24"** attached hereto.]

**63.**    On 6 May 2014 defendant ATTORNEY GENERAL issued her responses [*see* **Exhibits "25", "26", "27"** and **"28"** attached hereto] to CONSUMERS' DRAPER'S, WEISBERG'S, NOTKIN'S and CARLTON'S respective letters requesting clarification of whether Gen3 and/or Gen4 Glock pistols comply with the REGULATION.   Defendant ATTORNEY GENERAL sent identical boilerplate letters to CONSUMERS BOUDRIE and MAJOR on 14 and 21 May 2014, respectively. [*See* **Exhibits "29"** and **"30"** attached hereto.]  In each of her responses defendant ATTORNEY GENERAL wrote (quoted verbatim in the following shaded text):

> The handguns presently manufactured by Glock, Inc. ("Glock") are not in compliance with the Massachusetts Handgun Sales Regulations, because they lack an effective load indicator or magazine safety disconnect. This Office notified Glock of this fact in 2004, and since that time Glock has not notified this Office of any change in the features of their firearms nor attempted to certify any firearm model as compliant with the Massachusetts Handgun Sales Regulations. Therefore, newly manufactured Glock handguns may not be transferred by a handgun dealer to a Massachusetts civilian.

**64.**    Defendant ATTORNEY GENERAL's letter to CONSUMER CARLTON contained the additional text:

> Handgun dealers in Massachusetts have clear information on this point from Glock, EOPSS, and this Office, and are operating on more than the "rumor and speculation" you refer to in your letter when they inform prospective purchasers that Glock firearms cannot legally be sold to civilians in Massachusetts.

**65.**    The EOPSS website yielded exactly five (5) search results on 21 May 2014 for the search term "Glock".  [*See* **Exhibit "31"** attached hereto.]  ***None*** of the search results clarify anything whatsoever regarding the CONSUMERS' inquiries to the Defendant ATTORNEY GENERAL.

   **65.1.**    The first search result is the <u>Approved Firearms Roster</u> **Exhibit "1"** attached hereto.  As stated in paragraph , *supra*, EOPSS entire guidance in **Exhibit "1"** is:

> Massachusetts licensed firearms dealers should note that the transfers of handguns are also subject to the Attorney General's Handgun Sales Regulations, 940 CMR 16.00, et seq.  Firearms on this Approved Firearms Roster do not necessarily comply with the requirements of the Attorney General's Handgun Sales Regulations.  Information about those regulations, as well as the Enforcement Notice may be obtained from the Office of the Attorney General and may be accessed on the website of the Attorney General (www.ago.state.ma.us)."

   **65.2.**    The second search result is the <u>Chiefs Newsletter</u> of the Municipal Police Training Committee dated October 2011 (Volume 7, Issue 1) in an article about a citizen and police joint training exercise in California in which "Glock Simunitions pistols" was used.

   **65.3.**    The third search result is the <u>Standard MPTC Academy Equipment List 2012</u>, which includes "Sidearm, sponsored, Glock Model 23 40 Cal" as an alternative to "Sidearm, department issue".

   **65.4.**    The fourth search result is a scholarly article dated March 2011 by Northeastern University entitled <u>USING SOCIAL MEDIA TO PREVENT GANG VIOLENCE AND ENGAGE YOUTH</u>.  The search term "gloc/glock" is used once in the Appendix of "Slang Terms Responding Agencies Have Seen Online."

**65.5.** The fifth search result is the EOPSS <u>LARGE CAPACITY WEAPONS ROSTER 06-2011</u> which lists Glock pistol models 17, 19, 20, 21, 22, 23 and 24 as those requiring their possessor to have been issued a Massachusetts Class A license to carry firearms.[5]

**66.** The defendant ATTORNEY GENERAL's website, to which the EOPSS <u>Approved Firearms Roster</u> (**Exhibit "1"**) directed inquiries regarding the "requirements of the Attorney General's Handgun Sales Regulations", yielded exactly *one* (*1*) search result for the search term "Glock" on 23 May 2014. [*See* **Exhibit "32"** attached hereto.] That single result does not in the remotest way relate to any of the CONSUMERS' inquiries.

**66.1.** The single search result is the <u>BRIEF OF [nine states, including Massachusetts and the District of Columbia] AS AMICI CURIAE IN SUPPORT OF RESPONDENT [United States of America]</u> in a writ of certiorari to the United States Supreme Court from the Court of Appeals for the ***Fourth Circuit*** in a case entitled <u>Abramski v. U.S.</u> (No. 12-1493).

**66.2.** The term "Glock" is mentioned ***one time*** in this 50 page memorandum. The issue presented to the Supreme Court concerns the identity of a firearm ***purchaser***, not the identity of a ***firearm***.

## CLAIMS FOR RELIEF

### A.   First Claim for Relief:

*United States Constitution, 14th Amendment*
<u>*42 U.S.C. §1983*</u>

**67.** PLAINTIFFS restate and incorporate by reference herein each of the allegations set forth in Paragraphs 1 through 66 above.

**68.** The REGULATION at 940 CMR 16.05(3) is ***void for vagueness*** and therefore violates the DEALERS' right to due process under the Fourteenth Amendment because the DEALERS cannot determine with any reasonable certainty whether Gen3 and/or Gen4 Glock pistols comply with

---

[5]   As of February 2014, Class A firearm licenses comprised 88.7% of all five active firearm license types issued in Massachusetts. In 2013, the most recent year for which complete firearm license statistics are available, 92.0% of all five firearm license types issued in Massachusetts were Class A licenses.

the REGULATION.

**68.1.**   Specifically, 940 CMR §16.01 defines the "load indicator" design requirement for pistols sold or transferred into Massachusetts as "a device which plainly indicates that a cartridge is in the firing chamber within the handgun."

**A.**   The 940 CMR §16.01 definition of "load indicator" specifies what the load indicator "device" is intended to **do**, i.e. "plainly indicate[] that a cartridge is in the firing chamber within the handgun."

**B.**   The 940 CMR §16.01 definition of "load indicator" does **not** in any way specify **how** this load indicator "device" must indicate what it is intended to indicate, i.e. visually, tactilely, or otherwise.

**C.**   The 940 CMR §16.01 definition of "load indicator" does **not** in any way specify what this load indicator "device" must **be**, i.e. a button, a tab, a notch, a hole, a projection, etc.

**D.**   The 940 CMR §16.01 definition of "load indicator" does **not** in any way specify the **size**, **dimensions**, **color**, **shape**, **sound**, etc. of this load indicator "device".

**E.**   The 940 CMR §16.01 definition of "load indicator" does not specify **where** on the pistol this load indicator "device" must be, i.e. on the frame, the grip, the slide, the trigger, at the breach, at the muzzle, on right or left side or on both sides of the pistol, etc.

**F.**   Nowhere in 940 CMR §16.00, *et seq*. is there any **criteria** by which the "effectiveness" of a "load indicator" can be determined, either by the DEALERS or by the defendant ATTORNEY GENERAL herself.

**69.**   The REGULATION at 940 CMR 16.05(3) is **void as applied** because the defendant ATTORNEY GENERAL has proclaimed, *without explanation or elaboration*, that Gen3 and Gen4 Glock pistols which the CONSUMERS wish to purchase and which the DEALERS wish to sell, lack an "effective load indicator" device.

**69.1.** The defendant ATTORNEY GENERAL has not explained *how* or *why* she came to that conclusion. Indeed, she refuses to provide any such explanation or guidance.

**69.2.** On the other hand, defendant ATTORNEY GENERAL has ***not*** objected to an array of load indicator "devices" on various handguns lawfully sold throughout Massachusetts. For example, defendant ATTORNEY GENERAL has not to the best of the PLAINTIFFS' knowledge objected to any of the following handgun models or series of handgun models on the EOPSS Approved Firearms Roster (**Exhibit "1"** attached hereto) for *not* complying with the "load indicator" requirement:[6]

    **A.** **FMK** model 9C1 (page 2 of the Approved Firearms Roster): the loaded chamber indicator is a protruding pin on the breach end of the slide. [*See* **Exhibit "33"** attached hereto.]

    **B.** **Ruger SR** series of models (pages 12-16 of the Approved Firearms Roster): the loaded chamber indicator is a protruding tab on top of the slide, behind the ejection port. [*See* **Exhibit "34"** attached hereto.]

    **C.** **Sig Sauer** model 226 Mk-25 (pages 6-7 of the Approved Firearms Roster): the loaded chamber indicator is a hole at the rear of the barrel (chamber) through which one must look to observe whether there is a cartridge in the chamber. [*See* **Exhibit "35"** attached hereto.]

    **D.** **Remington Arms** model 1911R1 (page 6 of the Approved Firearms Roster): the loaded chamber indicator is a hole at the rear of the barrel (chamber) through which one must look to observe whether there is a cartridge in the chamber. [*See* **Exhibit "36"** attached hereto.]

    **E.** **Smith & Wesson** Bodyguard 380 (pages 7-11 of the Approved Firearms Roster): the loaded chamber indicator is a hole at the rear of the barrel (chamber) through which one must look to observe whether there is a cartridge in the chamber. [*See* **Exhibit "37"** attached hereto.]

---

[6] For clarify and to reduce the size of the exhibits attached to this Complaint, only the cover page and the relevant pages concerning "load indicators" from the cited owner/instruction manuals are included in the attached exhibits. Complete exemplars of the cited owner/instruction manuals will be immediately produced upon request.

**F.**     **Walther Arms** model P99 (page 16 of the <u>Approved Firearms Roster</u>): the loaded chamber indicator is a colored recess in the right side of the slide behind the ejection port which comes into view when the extractor engages the rim of a cartridge in the chamber.  [*See* **Exhibit "38"** attached hereto.]

**G.**     **Kahr Arms** (all models) (pages 3-4 of the <u>Approved Firearms Roster</u>):  the loaded chamber indicator is part of the extractor, and protrudes from the right side of the slide behind the ejection port.  [*See* **Exhibit "39"** attached hereto.]

**H.**     **Heckler & Koch** USP series of models (pages 3 of the <u>Approved Firearms Roster</u>):  the loaded chamber indicator is part of the extractor, and protrudes from the right side of the slide behind the ejection port.  [*See* **Exhibit "40"** attached hereto.]

**I.**     **Beretta** 92 series of models (pages 1-2 of the <u>Approved Firearms Roster</u>): the loaded chamber indicator is part of the extractor, and protrudes from the right side of the slide behind the ejection port.  [*See* **Exhibit "41"** attached hereto.]

**69.3.**  But the load indicator "device" employed on all Glock handguns is ***virtually identical to other such devices*** on various handguns to which the defendant ATTORNEY GENERAL has ***not*** objected as complying with the "load indicator" alternative design requirement.  In particular:

**A.**     Glock pistols employ an extractor-based load indicator that is ***virtually identical*** to the extractor-based load indicator "device" of Kahr Arms pistols on the <u>Approved Firearms Roster</u>.  [*See* **Exhibit "39"**.]

**B.**     Glock pistols employ an extractor-based load indicator that is ***virtually identical*** to the extractor-based load indicator "device" of the Heckler & Koch USP and P-series of pistols on the <u>Approved Firearms Roster</u>.  [*See* **Exhibit "40"**.]

**C.**     Glock pistols employ an extractor-based load indicator that is virtually identical to the extractor-based load indicator "device" of the Beretta 92-series of pistols on the <u>Approved Firearms Roster</u>.  [*See* **Exhibit "41"**.]

**70.**     To the DEALERS' and CONSUMERS' inquiries whether and why or why Glock pistols do not comply with *her* REGULATION, the defendant ATTORNEY GENERAL:

**70.1.**   responded with the vacant proclamation "The handguns presently manufactured by Glock, Inc. ("Glock") are not in compliance with the Massachusetts Handgun Sales Regulations, because they lack an effective load indicator or magazine safety disconnect", but made no effort to explain why the Glock load indicator "device" is ineffective as such;

**70.2.**   responded that her Office "has been clear and consistent in our communications to dealers and consumers about the reason that Glock firearms do not comply with the Regulations", though **none** of the DEALERS and **none** of the CONUMERS have **ever** received **any** communications from the defendant ATTORNEY GENERAL, including "the reason that Glock firearms do not comply with the Regulations";

**70.3.**   declared that "Handgun dealers in Massachusetts have **clear information** on [Glock pistols' alleged noncompliance with the REGULATION] from Glock, EOPSS, and this Office" [emphasis in bolded italics]

**A.**     while the EOPSS specifically disclaims responsibility for any handgun's compliance with the REGULATION and specifically directs users back to the defendant ATTORNEY GENERAL's website for that guidance,

**B.**     which website yields exactly **one (1)** result for the search term "Glock" and even that search result is in no conceivable way related to any of the issues in this lawsuit.

**70.4.**   and redirected the DEALERS' and CONSUMERS' inquiries to "the manufacturer, who should be able to provide you with that information", and directly to "Glock, Inc.", a private party who:

**A.**     does not have any known legal duty to inform the DEALERS or CONSUMERS whether any of their products comply with any particular Massachusetts regulation;

**B.**     does not have any known legal power to enforce any states' laws and/or

regulations, including those of Massachusetts;

  **C.**  is not subject to the REGULATION because neither Glock, Inc. nor Glock Performance, Inc. maintains FFLs and state firearm dealer licenses in the Commonwealth and are therefore not "handgun purveyors", and

  **D.**  even whose compelled presence in Massachusetts is dubious for a lack of minimum contacts (if that were even an issue).

**71.**  The Defendant ATTORNEY GENERAL's deflection of questions regarding regulatory compliance to a private party is an unlawful abdication of her ***governmental*** authority and inherent ***state*** police power vested solely in her ***public*** office as the Attorney General of Massachusetts.

**72.**  By maintaining and enforcing 940 CMR §16.05(3), defendant ATTORNEY GENERAL is denying fair notice to the DEALERS whether they may lawfully sell or transfer Gen3 and/or Gen4 Glock pistols to the CONSUMERS who have requested them.  DEALERS thereby risk an enforcement action by the defendant ATTORNEY GENERAL for disobeying her vacuous decree based on a regulation that is constitutionally void for vagueness.

**73.**  By maintaining and enforcing 940 CMR §16.05(3), defendant ATTORNEY GENERAL is propagating policies, customs and practices that violate the Fourteenth Amendment to the United States Constitution, ***facially*** and ***as applied*** against the DEALERS in this action, damaging the DEALERS in violation of U.S.C. §1983.  As such, the DEALERS' Fourteenth Amendment rights have been infringed, burdened, violated and/or unlawfully limited. DEALERS are therefore entitled to permanent injunctive relief against such policies, customs and practices.

## B.   Second Claim for Relief:

### *United States Constitution, 2ⁿᵈ Amendment*
### *42 U.S.C. §1983*

**74.**  PLAINTIFFS restate and incorporate by reference herein each of the allegations set forth in Paragraphs 1 through 73 above.

**75.** Gen3 and Gen4 Glock pistols are arms in common use throughout the United States. <u>District of Columbia v. Heller</u>, 554 U.S. 570, 624-628 (2008).

**76.** Gen3 and Gen4 Glock pistols are arms whose possession is protected by the Second Amendment to the United States Constitution.

**77.** By maintaining and enforcing 940 CMR §16.05(3), the defendant ATTORNEY GENERAL is preventing CONSUMERS from obtaining and possessing handguns, i.e. Glock pistols, whose acquisition and possession is protected by the Second Amendment to the United States Constitution.

**78.** Because federal and Massachusetts regulations limit the CONSUMERS' sources of handguns at retail (and for interstate transfers) to "handgun purveyors" located in Massachusetts, the CONSUMERS have no practical alternative source to acquire Gen3 and Gen4 Glock pistols, whose acquisition and possession is protected by the Second Amendment to the United States Constitution

**79.** By maintaining and enforcing 940 CMR §16.05(3), defendant ATTORNEY GENERAL is propagating policies, customs and practices that violate the Second Amendment to the United States Constitution, facially and as applied against the CONSUMERS in this action, damaging the CONSUMERS in violation of U.S.C. §1983.  As such, the CONSUMERS' Second Amendment rights have been infringed, burdened, violated and/or unlawfully limited.  CONSUMERS are therefore entitled to permanent injunctive relief against such policies, customs and practices.


## **PRAYER FOR RELIEF**


WHEREFORE the CONSUMERS, DEALERS and ORGANIZATIONS request that judgment be entered in their favor and against defendant ATTORNEY GENERAL as follows:

1.     An order permanently enjoining the defendant ATTORNEY GENERAL, her officers, agents, servants, employees, and all persons in active concert or participation with her from enforcing 940 CMR §16.05(3).

1   2.      Declaratory relief consistent with the injunction;

2   3.      Costs of suit, including attorney fees and costs pursuant to 42 U.S.C. §1983, and

3   4.      Any other further relief as this Court deems just and appropriate.

Respectfully submitted,

Dated:  11 June 2014.

**ROBERT DRAPER;  ARIEL WEISBERG;  DONNA MAJOR;  ERIC NOTKIN;  ROBERT BOUDRIE;  BRENT CARLTON;  CONCORD ARMORY, LLC;  PRECISION POINT FIREARMS, LLC;  SECOND AMENDMENT FOUNDATION, INC. and COMMONWEALTH SECOND AMENDMENT, INC.**

By and through their attorney of record

**/s/ Alexander A. Flig**

Alexander A. Flig, Esq (BBO #669132)
490 Chapman Street, Suite 201
Canton, Massachusetts 02021-2039
Telephone:    (781) 352-7260
Facsimile:     (781) 583-5080
E-Mail:      alex@fliglaw.com