UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
)
ROBERT DRAPER, et al.                                        )
                                                            )
           Plaintiffs,                                      )
                                                            )
           v.                                               )        Civil Action No.
                                                            )        1:14-CV-12471-NMG
MARTHA COAKLEY, in her official capacity as                 )        Leave to File Granted on 8/25/2014
ATTORNEY GENERAL OF MASSACHUSETTS                           )
                                                            )
           Defendant.                                       )
_____)


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION
TO DISMISS ALL CLAIMS OR STAY PROCEEDINGS ON ABSTENTION GROUNDS**


MARTHA COAKLEY
ATTORNEY GENERAL


/s/ Glenn Kaplan
Glenn Kaplan, BBO# 567308
Assistant Attorney General
Office of the Attorney General
One Ashburton Place, 18th Floor
Boston, MA 02108
(617) 727-2200
Glenn.Kaplan@state.ma.us


Dated:  August 25, 2014

TABLE OF CONTENTS

I.      INTRODUCTION ..................................................................................................1

II.     STATUTORY AND REGULATORY FRAMEWORK ...................................................2

III.    PLAINTIFFS LACK STANDING ..........................................................................3

        A.  Organizational Plaintiffs Lack Standing ................................................3

        B.  Dealer Plaintiffs Lack Standing ............................................................4

        C.  Consumers Lack Standing .....................................................................5

IV.     PLAINTIFFS FAIL TO STATE CLAIMS UPON WHICH RELIEF MAY BE GRANTED ........6

        A.  The Facial Vagueness Claim Must Be Dismissed .................................6

        B.  The As-Applied Vagueness Claim Must Be Dismissed As Well ......................8

            i.   Dealers cannot show they lacked "fair notice" .....................................8

            ii.  Dealers cannot show that 16.05(3) encourages "seriously
                 discriminatory enforcement" ................................................13

        C.  Consumer-Plaintiffs' Second Amendment Claim Must Be Dismissed ..........16

            i.   The Load Indicator Regulation Does Not Implicate the Second
                 Amendment ................................................................16

            ii.  Even If the Load Indicator Regulation Implicates Second Amendment
                 Rights, It Remains Constitutionally Permissible Because It Is
                 Substantially Related to the Important Interest in Promoting Public
                 Safety ................................................................18

V.      IN THE ALTERNATIVE, THE COURT SHOULD EXERCISE ABSTENTION .....................22

VI.     CONCLUSION ..................................................................................24

## I.    <u>INTRODUCTION</u>

In the current litigation, plaintiffs bring constitutional challenges to 940 Mass. Code Regs. (hereinafter, "CMR") 16.05(3),  a state safety regulation requiring load indicators or magazine disconnects on handguns sold by handgun dealers.[1]  The regulation is a civil restriction, issued under the state Consumer Protection Act.  It does not limit the guns that consumers may own.

Plaintiffs do not challenge the full regulatory provision.  The Complaint targets only the portion of the regulation that offers a "load indicator" (defined in 940 CMR 16.01 as "a device which plainly indicates that a cartridge is in the firing chamber within the handgun") as one alternative way to meet the safety standard.[2]  The Complaint alleges that consumers are unable to obtain Generations 3 and 4 Glock brand pistols from dealers because of 16.05(3).[3]  Compl. Exs. 6, 9–14.

From this premise, different plaintiffs conclude that different constitutional rights have been infringed.  The dealer-plaintiffs claim that the load indicator provision violates due process because it is void for vagueness, facially and as-applied.  Compl. ¶¶ 68, 69, 73.  The consumer-plaintiffs claim that the provision violates the Second Amendment.  Compl. ¶ 79.  Plaintiffs Second Amendment Foundation ("SAF") and Commonwealth Second Amendment, Inc. ("Comm2A") do not seem to make any legal claims at all.  Although the Complaint focuses on the alleged regulatory limitation on dealer sales of Generations 3 and 4 Glock pistols, no plaintiff asserts any state law claim.  In particular, plaintiffs do not challenge whether or not these Glock pistols in fact meet the regulatory requirement as a matter of state law.

---

[1] The regulation applies to "handgun purveyors," defined in 940 CMR 16.01 as persons or entities that transfer five or more handguns per year to customers in Massachusetts.  Any individual selling more than four firearms per year must be a licensed dealer.  Mass. Gen. Laws ch. 140, §§ 122, 128A.  Thus, the regulation governs handgun dealers.

[2] The other way to meet the standard is to include a "magazine safety disconnect," which prevents the firearm from discharging if the magazine (the rectangular box that holds extra ammunition and feeds it into the pistol) is removed from the gun.  <u>See</u> 940 CMR 16.05(3).  Plaintiffs mention but do not appear to challenge the magazine disconnect alternative in their Complaint.  Compl. ¶ 29.

[3] Glock itself is not a plaintiff to this suit.  The company brought void for vagueness and state law claims against the regulations when they were first enacted, and lost.  <u>See</u> <u>Am. Shooting Sports Council, Inc. v. Attorney Gen.</u>, 429 Mass. 871, 711 N.E. 2d 899 (1999).

The Commonwealth moves to dismiss this suit.  Plaintiffs lack standing and do not bring claims upon which relief can be granted, since there is no basis for their insupportable constitutional challenges. In addition, if the Court does not dismiss the claims, it should exercise abstention and have a state court definitively interpret the scope and meaning of the load indicator regulation, so as to avoid unnecessary and premature constitutional adjudication.

## II.   <u>STATUTORY AND REGULATORY FRAMEWORK</u>

The Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A, authorizes the Attorney General to promulgate regulations defining unfair and deceptive practices by entities in trade or commerce.  Mass. Gen. Laws ch. 93A, § 2(c).  In 1997, using this authority, the Attorney General promulgated a set of regulations applicable to handgun dealers.  <u>See</u> 940 CMR 16.00, et seq.  The gun industry challenged the regulations, and the Supreme Judicial Court upheld the Attorney General's authority to set product standards for firearms using chapter 93A.  <u>See</u> <u>Am. Shooting Sports Council, Inc. v. Attorney Gen.</u>, 429 Mass. 871, 711 N.E. 2d 899 (1999).  The regulations require that handguns sold by handgun dealers, with some exceptions, meet safety tests and include safety features.  One provision requires that any semi-automatic pistol include either a "load indicator" or a "magazine safety disconnect."  940 CMR 16.05(3).  The regulation defines a load indicator as "a device which plainly indicates that a cartridge is in the firing chamber within the handgun."  940 CMR 16.01.

This past year, plaintiff-dealers in this case contacted the Attorney General's Office inquiring whether Generation 3 and 4 Glock semi-automatic pistols meet the "load indicator" requirement.  The Deputy Chief of the Consumer Protection Division responded to the inquiries, noting "As this Office has stated publicly in the past, the handguns presently manufactured by Glock, Inc. are not in compliance with the Massachusetts Handgun Sales Regulations, because they lack an effective load indicator or magazine safety disconnect."  Compl. Ex. 23; <u>see also</u> Compl. Ex. 24.   After receiving this response, plaintiffs filed the present suit.

## III.   PLAINTIFFS LACK STANDING

Article III standing is jurisdictional, and the burden of establishing it is on plaintiffs.  Clapper v. Amnesty Int'l USA, 133 S. Ct. 1138, 1146 (2013) ([P]laintiffs "must establish that they have standing to sue.") (quoting Raines v. Byrd, 521 U.S. 811, 818 (1997)).  In order to demonstrate standing, plaintiffs must show an injury that is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling."  Id. at 1147 (quoting Monsanto Co. v. Geertson Seed Farms, 561 U.S. 139, 149 (2010)).  Here, none of the plaintiffs show the requisite injury, and thus do not satisfy their burden of showing subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).  Thus, plaintiffs' claims should be dismissed.

### A.  Organizational Plaintiffs Lack Standing

The organizational plaintiffs state that they represent themselves and their members[4] (Compl. ¶¶ 7.1, 7.2), but do not allege harm to themselves or to their members, as is required for organizational standing.  Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 181 (2000); Simon v. E. Kentucky Welfare Rights Org., 426 U.S. 26, 39–40 (1976); Warth v. Seldin, 422 U.S. 490, 511 (1975).  Allegations merely setting out an organization's purpose and the geographic location of its members are insufficient.  Warth, 422 U.S. at 511; Fletcher v. Haas, 851 F. Supp. 2d 287, 291 (D. Mass. 2012) (SAF did not have standing); Kachalsky v. Cacace, 817 F. Supp. 2d 235, 251 (S.D.N.Y. 2011), aff'd sub nom. Kachalsky v. County of Westchester, 701 F.3d 81 (2d Cir. 2012) (SAF did not have standing).  Here, none of the counts of the Complaint indicate they are being brought by the organizations. Neither do the Complaint's counts even directly mention the organizations.[5]  There can be no case or controversy under Article III for plaintiffs who do not allege any injury or cause of action.  Given that jurisdiction may not be inferred, neither organization has standing.  FW/PBS, Inc. v. City of Dallas, 493

---

[4] In fact, Comm2A does not even allege that it has any members.  It references only its "supporters," does not allege it is a membership organization or the functional equivalent of a membership organization, and does not allege that its "supporters" have control over any aspect of the organization.  See Fund Democracy, LLC v. SEC, 278 F.3d 21, 25–26 (D.C. Cir. 2002) (where association had no members or "any equivalent affiliates," there was no representational standing).

[5] The Counts do "incorporate by reference" the rest of the body of the Complaint, see, e.g., Compl. ¶¶ 67, 74, but nowhere in the rest of the body do the organizations identify themselves as bringing any claims.

U.S. 215, 231 (1990); McNutt v. Gen. Motors Acceptance Corp. of Indiana, 298 U.S. 178, 189 (1936).

**B. Dealer Plaintiffs Lack Standing**

Similarly, the dealer-plaintiffs fail to make a sufficient allegation of injury related to their vagueness challenge.  In the Complaint, they assert that they "cannot determine with any reasonable certainty whether Gen3 and/or Gen4 pistols comply with the REGULATION."  Compl. ¶ 68.  The dealers then allege they are injured because they have eschewed selling Generations 3 and 4 Glocks due to their questions over the applicability of the regulation.  Compl. Exs. 15, 16.  Whether any purported lost sales were caused by the dealer-plaintiffs' alleged uncertainty is crucial.  To be a relevant injury for purposes of standing, the injury must be one that relates to the specific claim—in this case, supposed uncertainty—on which plaintiffs seek recovery.  Katz v. Pershing, LLC, 672 F.3d 64, 71–72 (1st Cir. 2012) ("[C]ausation…requires the plaintiff to show a sufficiently direct causal connection between the challenged action and the identified harm.").  Here, however, there was no actual uncertainty about how the regulation would apply to the dealers.  The Complaint makes clear that the dealers in fact knew that sale of the relevant Glocks violated 16.05(3).  Compl. ¶ 70.1.  The Attorney General's Office, in response to their inquiries, directly informed them of this fact.  Compl. Exs. 23, 24.  See Ward v. Rock Against Racism, 491 U.S. 781, 795–96 (1989) (in connection with a facial vagueness challenge, administrative interpretation and implementation of a regulation are highly relevant, as they can serve as a limiting construction that remedies any possible vagueness).

The Attorney General's Office is the relevant regulatory authority for Mass. Gen. Laws ch. 93A, see Am. Shooting Sports Council, 429 Mass. 871, 875, 711 N.E.2d 899, 902 (1999), and its letters should therefore provide content to the regulation as applied to the dealers.[6]  The letters make clear that the regulation applies to the Glocks the dealers want to sell.  Moreover, materials attached to the Complaint note that dealer Precision Point was aware "for years" that Generations 3 and 4 Glocks

---

[6] See Crooker v. Magaw, 41 F. Supp. 2d 87, 89–90 (D. Mass. 1999) (in challenge to Bureau of Alcohol, Tobacco, and Firearms ("ATF") interpretation of firearms statute, deferring to interpretive letter written by ATF).

violated the regulation.  Compl. Ex. 16.  The dealers' alleged injury, therefore, could not have been related to any vagueness or uncertainty about the applicability of 16.05(3) to them.[7]  To the contrary, any loss of sales would have flowed from the very clarity of the Attorney General's (negative) construction of the statute as applied to Glock.  Loss of sales may provide standing for a state-law claim (albeit meritless) that the Office of the Attorney General's interpretation violates the regulation, but it cannot supply standing for a constitutional claim that the regulation is vague.

The Supreme Court has emphasized that a litigant seeking to challenge a statue for vagueness must demonstrate that the statute is vague as applied to his own conduct, regardless of its potentially vague application to others.  See Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 495 (1982).  Because the Attorney General's Office informed the dealers, relating to the very circumstances at issue in their vagueness challenge, that these Glock pistols in fact violated the regulation, there is no vagueness here and no injury that may be attendant to it.  The dealers may well have lost sales due to an inability to sell weapons under the law, but again they did not sue seeking a ruling that the Generations 3 and 4 Glocks comply with the statute or that the Attorney General was erroneous in the determination that these Glocks do not comply.[8]  Instead, they allege only that the regulation is unconstitutionally vague and that this vagueness left them adrift, unable to decide whether they could sell the weapons.  The Complaint does not sustainably allege an injury traceable to such claimed vagueness.  Thus, the dealers fail to meet the Clapper requirements for standing.

## C. Consumers Lack Standing

Finally, the consumers fail to allege a cognizable Second Amendment injury.  As discussed infra, Section IV(C), the regulation here does not impinge on any Second Amendment right.  Therefore, the consumer-plaintiffs, just like the organizations and dealers, lack standing to bring suit.

---

[7] Plaintiffs may also intend to claim the threat of enforcement under the civil regulation as an injury.  Such a claim of injury would be fatally flawed for the same reason – it is causally unrelated to any purported vagueness.

[8] The dealers likely recognize that the Eleventh Amendment bars any such state-law claim against a state official in federal court.  Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 117 (1984).

## IV.   PLAINTIFFS FAIL TO STATE CLAIMS UPON WHICH RELIEF MAY BE GRANTED

Even if plaintiffs have standing, they fail to state any claims on which relief can be granted.  Thus, this Court should dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

Under Fed. R. Civ. P. 8(a)(2), a pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  While detailed factual allegations are not required, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" in order to survive a motion to dismiss under 12(b)(6). Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  Plaintiffs must allege more than a "sheer possibility" of defendant's unlawful behavior; "unadorned" accusations or legal conclusions will not suffice.  Id. at 678.  Moreover, while the Court must accept all well-pleaded factual allegations in the complaint as true, it is not obligated to accept the truth of any unsupported conclusory statements or legal suppositions.  Id.  When plaintiffs plead sufficient factual content to lead the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged," and where other conclusions are not more likely, the claim is facially plausible. Id. at 678, 680.  Plaintiffs' Complaint fails to meet these pleading requirements, and their claims, therefore, should be dismissed.

### A.   The Facial Vagueness Claim Must Be Dismissed

The dealers opine that 16.05(3)'s load indicator provision is "facially vague" and thus violates the Fourteenth Amendment's Due Process Clause.  Compl. ¶¶ 2, 73.  However, to succeed on a facial claim, the dealers must show that "no set of circumstances exists under which the Act would be valid."[9] United States v. Salerno, 481 U.S. 739, 745 (1987).[10]  Facial challenges are very much disfavored,[11] and have been greatly restricted in the First Circuit outside of the First Amendment context.  See, e.g., Love v. Butler, 952 F.2d 10, 13 (1st Cir. 1991); United States v. Angiulo, 897 F.2d 1169, 1179 (1st Cir. 1990).

---

[9] Several courts have refined the Salerno "no set of circumstances" standard to mean that a statute is vague where it lacks any "plainly legitimate sweep."  Hightower v. City of Boston, 693 F.3d 61, 77–78 (1st Cir. 2012); Washington State Grange v.

Here, Plaintiffs cannot meet the facial vagueness test.  By the regulation's very terms, it is clear that there are specific instances where firearms will fail to meet the standards.  For instance, firearms that clearly lack any "device that plainly indicates that there is a cartridge in the firing chamber within the handgun" would obviously not meet the requirements of 16.05(3).  And such guns do exist.  See Pitonyak v. State, 253 S.W.3d 834, 845 (Tex. App. 2008) ("testimony of defense firearms expert…who testified that the pistol in question did not have a safety or a loading indicator to show that a bullet is in the firing chamber"); Bell v. Glock, Inc. (USA), 92 F. Supp. 2d 1067, 1068 (D. Mont. 2000) ("The Glock Model 20 handgun is a semi-automatic 10mm pistol…. The Model 20 does not have a conventional manual external safety or a loaded chamber indicator." [12]); Smith ex rel. Smith v. Bryco Arms,  33 P.3d 638, 641 (N.M. App. 2001) ("[T]he J-22 handgun does not incorporate a 'magazine-out safety,' a 'chamber load indicator,' or a written warning on the gun itself alerting users that the J-22 can fire even though the magazine has been removed.").  So long as there is some application under which the regulation would not be vague, a facial vagueness claim is inappropriate.  Hoffman Estates, 455 U.S. at 495, 497; URI Student Senate v. Town of Narragansett, 631 F.3d 1, 13 (1st Cir. 2011).  See Richmond Boro Gun Club, Inc. v. City of New York, 97 F.3d 681, 684 (2d Cir. 1996) (a restriction on firearms where the pistol grip "protrudes conspicuously" is not facially vague under the "no circumstances" test when "it is obvious in this case that there exist numerous conceivably valid applications of [the local law]").  Here, the facial

---

Washington State Republican Party, 552 U.S. 442, 449 (2008).  The Supreme Court implied in Washington State Grange that either Salerno or the "plainly legitimate sweep" test would suffice.

[10] But see City of Chicago v. Morales, 527 U.S. 41 (1999) (plurality opinion characterizing Salerno standard as dictum and applying a new standard: where a criminal statute with no mens rea requirement threatens constitutionally protected liberty interests, it is subject to facial attack if "vagueness permeates" the law).  Morales analyzed a criminal loitering statute, unlike the civil law at issue here, and, in any event, has been limited or distinguished.  See, e.g., United States v. Inzunza, 638 F.3d 1006 (9th Cir. 2009); Roark & Hardee LP v. City of Austin, 522 F.3d 533 (5th Cir. 2008); Doctor John's Inc. v. City of Roy, 465 F.3d 1150 (10th Cir. 2006);  Lytle v. Doyle, 326 F.3d 463 (4th Cir. 2003); Horton v. City of St. Augustine, Fla., 272 F.3d 1318 (11th Cir. 2001).

[11] Washington State Grange, 552 U.S. at 450–51 (facial challenges often result in premature interpretation of statutes, rest on speculation, are contrary to judicial restraint principles, and "short circuit the democratic process"); Sabri v. United States, 541 U.S. 600, 609 (2004); Hightower, 693 F.3d at 81.

[12] The Glock Model 20 referenced in the cited case is not one of the Generation 3 or 4 Glocks at issue here.  Bell, 92 F. Supp. 2d at 1068.

7

vagueness claim should be dismissed.

### B. The As-Applied Vagueness Claim Must Be Dismissed As Well

The dealers also seek to abrogate the load indicator provision because it is unconstitutionally vague "as applied." Compl. ¶ 73. However, plaintiffs making such a claim in a pre-enforcement, civil business context again have a high burden to overcome.[13] To make an as-applied claim, plaintiffs must demonstrate that, in their own circumstances, the regulation "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." United States v. Williams, 553 U.S. 285, 304 (2008) (hereinafter the "Williams test"). While Williams involved a facial vagueness challenge, its criteria have since provided the basis for as-applied challenges as well. See Holder v. Humanitarian Law Project, 561 U.S. 1, 18–19 (2010) (applying a variation of Williams standard to an as-applied pre-enforcement challenge).[14] Here, the dealers have not met the Williams test.

#### i.      Dealers cannot show they lacked "fair notice"

The dealers cannot show that the regulation failed to provide them with the "fair notice" required by Williams for two reasons. First, they cannot meet this requirement because they were directly informed by the relevant enforcement authority that the regulation applied to them and their contemplated conduct. Compl. ¶ 70.1; Exs. 23, 24. Actual knowledge can defeat a claim that "fair notice" is lacking. See United States v. Zhen Zhou Wu, 711 F.3d 1, 15–16 (1st Cir. 2013), cert. denied, 134 S. Ct. 365 (2013) (court need only determine whether regulation is vague as applied to the particular defendants; actual belief of defendants regarding certain claims at issue in the case, demonstrated in part by their receipt of warnings of potential violation, established "fair notice" for those claims); United States v.

---

[13] In fact, in non-First Amendment cases, some courts have implied that pre-enforcement as-applied challenges are inappropriate, even when examining laws with criminal penalties. Shew v. Malloy, 2014 WL 346859, at *12 n.67 (D. Conn. 2014) ("[C]hallenges mounted 'pre-enforcement,' that is before the plaintiffs have been charged with a crime under the legislation, are properly labeled as a facial challenge." (quoting Richmond Boro Gun Club, 97 F.3d at 685)).

[14] Indeed, regulations in the as-applied, pre-enforcement, non-First Amendment, commercial, civil context may not even need to meet the Williams test. Because Williams is in any event met here, we cite to cases applying the Williams test in various contexts to support our argument.

Saffo, 227 F.3d 1260, 1270 (10th Cir. 2000) ("The evidence produced at trial demonstrates that Saffo had knowledge of the illegality of her activities, and thus this is not a situation where she 'could not reasonably understand that [her] contemplated conduct is proscribed'. . . .  We conclude that, as applied to Saffo, the statute is not unconstitutionally vague.") (citing Parker v. Levy, 417 U.S. 733, 757 (1974)).[15] The Complaint admits that the dealers were aware of how the regulation would be applied to the Glock pistols at issue.  See Compl. ¶ 70.1.  In fact, as noted in Section II, supra, the Complaint's exhibits directly address this issue.  These exhibits include letters to both dealers from the Deputy Chief of the Attorney General's Consumer Protection Division declaring, "As this Office has stated publicly in the past, the handguns presently manufactured by Glock, Inc. are not in compliance with the Massachusetts Handgun Sales Regulations, because they lack an effective load indicator or magazine safety disconnect."  Compl. Ex. 23; see also Compl. Ex., 24.  In Zhen Zhou Wu, 711 F.3d 1 at 15, the court noted that even in the absence of actual notice on certain claims, the existence of a process for getting government clarifications mitigated concerns about how the law might otherwise trap an unwary dealer.  Here, the dealers have not just an available process but an actual answer from a government official that is unquestionably clear as to the particular conduct in which they allegedly wish to engage.  The dealers have no basis for bringing an as-applied vagueness challenge.

Second, even if their undisputed actual knowledge did not foreclose this issue, the dealers still would be unable to meet the Williams "fair notice" requirement.  That standard is less restrictive when applied to civil statutes.  Winters v. New York, 333 U.S. 507, 515 (1948); Shew, 2014 WL 346859, at *12 (D. Conn. 2014) ("[V]agueness in statutes with criminal penalties is tolerated less than vagueness in those with civil penalties.").  This is especially true when statutes regulate economic or commercial activities.

---

[15] See also Advance Pharm., Inc. v. United States, 391 F.3d 377, 397 (2d Cir. 2004) (statute not unconstitutionally vague where, among other reasons, "[D]efendants…in fact had [the challenged] language clarified for them in no less than three meetings with federal authorities."); United States v. Clinical Leasing Serv., Inc., 925 F.2d 120, 122–23 (5th Cir. 1991); cf. United States v. Blake, 288 F. App'x 791, 795 n.4 (3d Cir. 2008) (noting that "while the vagueness inquiry is an objective one," defendant demonstrated "actual knowledge" that his conduct was prohibited by criminal statute).

Hoffman Estates, 455 U.S. at 498-99; Papachristou v. City of Jacksonville, 405 U.S. 156, 162 (1972) ("In the field of regulatory statutes governing business activities, where the acts limited are in a narrow category, greater leeway is allowed."); Home Depot, Inc. v. Guste, 773 F.2d 616, 629 (5th Cir. 1985) ("[L]ax vagueness standard [is] applicable to statutes regulating economic activity."); United Cos. Lending Corp. v. Sargeant, 20 F. Supp. 2d 192, 204 (D. Mass. 1998) (facial challenge to business regulation promulgated under ch. 93A held to lower standard for "fair notice"). As a result, phrases that have meanings in common usage will readily pass such requirements, see Austin Commercial v. Occupational Safety & Health Review Comm'n, 610 F.2d 200, 201–02 (5th Cir. 1979) ("Defective rigging equipment" and "inspection" are not vague, as they have natural and plain meanings), and statutes and regulations are not expected to be written with "perfect clarity." Williams, 553 U.S. at 304; accord Nat'l Org. for Marriage v. McKee, 649 F.3d 34, 62 (1st Cir. 2011) ( "[I]n most English words and phrases there lurk uncertainties" and such a level of vagueness is not one that "rises to the level of constitutional concern."). Given these standards, "the mere fact that a regulation requires interpretation does not make it vague." Ridley v. Massachusetts Bay Transp. Auth., 390 F.3d 65, 93 (1st Cir. 2004).

The regulatory language at issue here, "a device which plainly indicates that a cartridge is in the firing chamber within the handgun," readily meets these requirements. Its wording is straightforward, and it describes the purpose of a load indicator—to let a user know if the gun is loaded. While the phrase "device which plainly indicates" is the key language to which plaintiffs object, all its words are within common everyday usage, and their meanings are hardly obscure. For instance, the word "plain" has a meaning that is readily accessible. See Webster's 7th New Collegiate Dictionary 646 (1967) ("evident to the mind or senses: obvious"); Am. Heritage College Dictionary 1063 (4th ed. 2004) ("Free from obstruction, open; clear: in plain view[;] Obvious to the mind; evident"). The words "plain" or "plainly" are indeed used over 100 times in the Massachusetts General Laws and over 150 times in the U.S. Code.[16]

---

[16] See, e.g., 21 U.S.C. § 209 (2012) ("[The] package shall be **plainly** labeled with the name of the substance….") (emphasis added); Mass. Gen. Laws ch. 160, § 176A ("Every railroad corporation shall equip each of its track motor cars… with an electric headlight of sufficient candle power when lighted to render **plainly** visible during clear weather") (emphasis added).

The word "indicates" also has a readily accessible common meaning.  See Webster's at 427 ("to point out or point to with more or less exactness[;] to be a sign, symptom, or index of"); Am. Heritage at 705 ("To show the way to or the direction of; point out[;] To serve as a sign, symptom, or token of; signify"). "Indicate" is used over 500 times in the Massachusetts General Laws and over 700 times in the U.S. Code.[17] Finally, the word "device" has a common meaning.  See Webster's at 227 ("a piece of equipment or a mechanism designed to serve a special purpose or perform a special function"); Am. Heritage at 388 ("A contrivance or an invention serving a particular purpose"); Black's Law Dictionary 483 (8th ed. 2004) ("A mechanical invention, as differentiated in patent law from a chemical discovery. A device may be an apparatus or an article of manufacture").  "Device" appears over 600 times in the Massachusetts General Laws and over 1,000 times in the U.S. Code.[18]

In general, the use of words like "device," "plainly," and "indicate" cannot form the basis for a claim of unconstitutional vagueness "as-applied."  Even in the criminal context, words of similar common usage have been held to pass the "fair notice" test.  See  United States v. Farhane, 634 F.3d 127, 140 (2d Cir. 2011) ("training" and "personnel" not unconstitutionally vague in context of statute prohibiting providing training to terrorist organizations; person of ordinary intelligence would recognize the meaning in the context); Colorado Outfitters Ass'n v. Hickenlooper, 2014 WL 3058518, at *22 (D. Colo. 2014) ("'possession' and 'continuous' are in common usage and have readily defined meanings"); New York State Rifle & Pistol Ass'n, v. Cuomo, 990 F. Supp. 2d 349, 376 (W.D.N.Y. 2013) ("can be restored or converted" is not vague).  For a civil provision like 16.05(3), the issue is therefore not even a close one.

---

[17] See, e.g., 23 U.S.C. § 321 (2012) ("If a State has a practice of erecting on projects under actual construction without Federal-aid highway assistance signs which indicate the source or sources of any funds used to carry out such projects, such State shall erect … signs which are visible to highway users and which **indicate** each governmental source of funds being used….") (emphasis added); Mass. Gen. Laws ch. 255B, § 15 ("After the payment of all sums for which the buyer is obligated under a retail instalment contract, the holder of such contract shall mail to the buyer at his last known address, good and sufficient instruments to **indicate** payment in full and to release all security in the motor vehicle.") (emphasis added).

[18] See, e.g., 30 U.S.C. § 871(g) (2012) ("The Secretary shall, within sixty days after the operative date of this subchapter, require that **devices** be installed on all such belts which will give a warning automatically when a fire occurs on or near such belt") (emphasis added); Mass. Gen. Laws ch. 166, § 21B(3) ("[An] insulated cagetype guard or other effective protective **device** of a type approved by the commissioner of labor and industries shall be installed about the boom or arm of all hoisting or other such construction equipment, except backhoes or dippers, being operated in proximity of overhead high voltage lines.") (emphasis added).

See Hoffman Estates, 455 U.S. at 489-99 (allowing greater tolerance for imprecise word choices in the civil context). This is particularly true where the challenged regulation applies only to professional licensed gun dealers in the Commonwealth. As previously noted, civil regulations that govern commercial conduct are treated even less strictly in vagueness analysis. See Papachristou 405 U.S. at 162; Zhen Zhou Wu, 711 F.3d at 14; United Cos. Lending Corp., 20 F. Supp. 2d at 204-05 ("otherwise unconscionable" not vague in civil business regulation under 93A). That is because courts rightly expect that merchants in a regulated industry should have a higher level of sophistication regarding the subject matter of their wares, and that those merchants can be more readily expected to interpret the rules that govern their transactions. See Zhen Zhou Wu, 711 F.3d at 14 ("It is not too much to ask these businessmen and businesswomen to comply with export control regulations, even if the meaning of those regulations might not be immediately obvious to someone lacking the same sophistication."); see also McGowan v. Maryland, 366 U.S. 420, 428 (1961) ("We believe that business people of ordinary intelligence…would be able to know what exceptions are encompassed by the statute either as a matter of ordinary commercial knowledge or by simply making a reasonable investigation….").

Pictures of the Glock load indicator device shown in Complaint exhibits 42 and 43 do not show any discernible difference in the load indicator before the gun is loaded and after the gun is loaded, let alone an "obvious" or "evident" one. See Webster's at 646 (definition of "plain"). As a result, in the as-applied context that is set forth in the Complaint itself, there is ample "fair notice" of how the regulation applies to such weapons. Section 16.05(3) is a readable, straightforward regulation that provides sufficient guidance for firearms dealers of ordinary intelligence, while still allowing for flexibility. It accordingly meets the Williams "fair notice" standard.[19]

---

[19] The dealers also allege that the load indicator provision does not specifically require where on the firearm the device should be, the shape the device must take, etc. Compl. ¶ 68.1. The fact that there may be a variety of ways to satisfy the objective standard in the regulation, however, is not a ground for an as-applied challenge. Regulations can leave regulated entities with choices for compliance, and they indeed can leave those entities with some flexibility on how to meet the requirements. See, e.g., Am. Export-Isbrandtsen Lines, Inc. v. Federal Mar. Comm'n, 389 F.2d 962, 967 (D.C. Cir. 1968) ("Any vagueness in the Commission's order should make compliance with it that much easier. . . . It hardly behooves them to complain that they have been left too many options in undertaking this task."); Henkes v. Fisher, 314 F. Supp. 101, 108 (D. Mass. 1970), aff'd, 400

     **ii.**     **Dealers cannot show that 16.05(3) encourages "seriously discriminatory enforcement"**

In the pre-enforcement, civil, commercial context that is present here, the key inquiry for as-applied vagueness is the "fair notice" aspect of the <u>Williams</u> test.  As the Eighth Circuit has specified, "Laws regulating business behavior are held to a lesser standard of definiteness…. Consequently, the prospect of discriminatory enforcement of such a law is especially speculative in a pre-enforcement challenge, and therefore 'the princip[al] inquiry is whether the law affords fair warning of what is proscribed.'"  <u>Garner v. White</u>, 726 F.2d 1274, 1278 (8th Cir. 1984) (quoting <u>Hoffman Estates</u>, 455 U.S. at 503); <u>see also</u> <u>Gonzales v. Carhart</u>, 550 U.S. 124, 150 (2007) ("Respondents' arguments concerning arbitrary enforcement, furthermore, are somewhat speculative.  This is a pre-enforcement challenge, where no evidence has been, or could be, introduced to indicate whether the [Act] has been enforced in a discriminatory manner or with the aim of inhibiting [constitutionally protected conduct.]") (internal quotations omitted).  Thus, in this case, it is not even clear that the second <u>Williams</u> prong could provide a basis for an as-applied vagueness challenge.  In any event, a review of the "discriminatory enforcement" aspect of the <u>Williams</u> test shows that plaintiffs have failed to establish vagueness here under the second prong as well.

This aspect of <u>Williams</u> asks whether the regulation in question "is so standardless that it authorizes or encourages seriously discriminatory enforcement."  <u>Williams</u>, 553 U.S. at 304.  In the Complaint, the dealers never even allege this.  The closest they come is an allegation that the Attorney General "has not objected" to certain pistols that they claim contain "virtually identical" safety devices to those on the Glock Generations 3 and 4 handguns.  Compl. ¶ 69.3 (emphasis omitted).[20]  Such an allegation falls short of the mark.  Opining that the Attorney General "has not objected" to certain pistols

---

U.S. 985 (1971) ("The language that plaintiffs contend is indefinite is simply the means provided to produce the flexibility necessary when such value judgments must be made.").

[20] To the extent that the dealers allege that the availability of choices regarding such considerations as where to place the load indicator make 16.05(3) standardless, <u>see</u> Compl. ¶ 68.1, the fact that a regulation provides flexibility for compliance does not render it susceptible to "seriously discriminatory enforcement."  <u>See</u> note 19.

is not the same as alleging that the Attorney General has either approved them or given any indication that they meet the load indicator standards.  "[G]enerally speaking, administrative agencies do not have an enforceable obligation to perform this sort of advisory mission, for good and practical reasons."  Crooker v. Magaw, 41 F. Supp. 2d 87, 92 (D. Mass. 1999).

Moreover, while the dealers opine that the load indicators of these other guns are "virtually identical" to devices on Generations 3 and 4 Glock pistols, the materials attached to the Complaint[21]— excerpts from the manuals for these other weapons—belie that assertion.  Yacubian v. United States, 750 F.3d 100, 107–08 (1st Cir. 2014) (stating that if an exhibit contradicts allegations in the complaint, the exhibit contents trump the complaint allegations) (internal citations omitted).  These manual excerpts show guns with colored indicators that provide a shading contrast to demonstrate (1) the location of the load indicator and (2) that cartridges are in the firing chamber.  See Compl. Exs 39–41.  On the other hand, the Glock device, as seen in the Exhibits to the Complaint, is not colored and does not provide such a contrast.  The extent of protrusion, the shape, the size, and the exact placement of the load indicator device also appear from the exhibits to differ between Glocks and those purportedly "virtually identical" firearms.  Compare Exs. 39–41 with Exs. 42, 43.  Broad conclusory allegations in a complaint are again not entitled to deference, even at a motion to dismiss stage, when they are contradicted by other materials in the Complaint.  Iqbal, 556 U.S. at 678–79; In re Lane, 937 F.2d 694 (1st Cir.1991) (citing Fed. R. Civ. P. 10(c)) (exhibits are part of pleadings, to be considered with the complaint on a 12(b)(6) motion to dismiss); Yacubian, 750 F.3d at 107–08 (exhibits' contents trump complaint's allegations) (internal citations omitted).  The dealers therefore do not make a viable allegation that the regulation "is so standardless that it authorizes or encourages seriously discriminatory enforcement."

Plaintiffs include in the Complaint a variety of other allegations that appear unrelated to the elements in the Williams test.  See, e.g., Compl. ¶¶ 3, 69 (AG "proclaimed, without explanation or elaboration" that Generations 3 and 4 Glock pistols did not contain a load indicator (emphasis omitted));

---

[21] Compl. Exs. 39–41.

Compl. ¶¶ 3, 69.1, 70.1 (AG did not explain why Generations 3 and 4 Glocks did not meet the load indicator requirement); Compl.¶ 71 (describing AG "deflection of questions"); Compl. ¶ 4 (AG conclusions were "capricious"); Compl. ¶ 65–70.3 (AG said dealers had clear information from Glock and the Executive Office of Public Safety regarding Generations 3 and 4 Glock status under the regulations when allegedly this was not the case).  It is possible that plaintiffs are attempting to allege that the letters from the Attorney General's Office somehow show that the regulation encourages discriminatory enforcement.  If so, the allegation is insufficient.[22] Nothing about the letters demonstrates discriminatory enforcement.  Plaintiffs made an inquiry about a single type of handgun, and were told that it violated the regulation.  There is nothing discriminatory about that.[23]  Thus, even this indirect attempt to show the regulation fails the <u>Williams</u> test, if indeed that is what the plaintiff dealers intended, falls short. None of these assertions provides support for the vagueness challenge or cures its obvious deficiencies.

Dealer-plaintiffs accordingly can make no viable showing under the second <u>Williams</u> prong either. Given that their Complaint fails to state an as-applied vagueness claim upon which relief can be granted, it is fully appropriate to dismiss the claim at this stage of the proceedings.  <u>See, e.g.</u>, <u>Horn v. Burns & Roe</u>, 536 F.2d 251, 254–55 (8th Cir. 1976) (rejecting as-applied void for vagueness challenge at motion to dismiss stage); <u>Graffam v. Town of Harpswell</u>, 250 F. Supp. 2d 1, 8–9 (D. Me. 2003) (rejecting as-applied vagueness claim as not sufficiently developed).

---

[22] It may be that plaintiffs are attempting to base their vagueness claim not on the regulation, but on purported vagueness of the response to their inquiries to the Attorney General about the Generations 3 and 4 Glocks.  If so, they make no claim at all.  The letters are perfectly clear—the dealers may not sell the Glocks at issue because they fail to meet the requirements of 16.05(3). <u>See</u> Compl. Exs. 23, 24.  The Attorney General was under no obligation to respond to their inquiries at all, and having done so was under no obligation to offer analysis or explanation to accompany the answer to the questions. <u>Magaw</u>, 41 F. Supp. 2d at 92; <u>cf.</u> <u>Neighborhood Ass'n of The Back Bay, Inc. v. Fed. Transit Admin.</u>, 463 F.3d 50, 60 (1st Cir. 2006) ("[N]o specific requirement in the statute, the regulations or the APA that the FTA provide detailed explanations for its decision…."); <u>Rhode Island Hosp. v. Sebelius</u>, 670 F. Supp. 2d 148, 154 (D.R.I. 2009) (under the APA, "the Secretary is not obligated to provide 'guidance' about all aspects of Medicare reimbursement").  To the extent that the governing regulation itself is not vague, it cannot be challenged as vague because a letter (which indicates that a specific firearm fails the regulatory standard) does not explain its reasoning to the dealers' satisfaction. <u>See</u> <u>Magaw</u>,  41 F. Supp. 2d at 92.

[23] Moreover, it is important to remember the full text of the second <u>Williams</u> prong:  the challenged regulation must be "so **standardless** that it … encourages seriously discriminatory enforcement."  <u>Williams</u>, 553 U.S. at 304 (emphasis added).  As noted at pages 9–12,  <u>supra</u>, the regulation has a plain meaning sufficient to give "fair notice" of what is prohibited to firearms dealers of ordinary intelligence, and the Attorney General's letters have given them unequivocal guidance in any event.

### C. Consumer-Plaintiffs' Second Amendment Claim Must Be Dismissed

The consumer-plaintiffs separately claim that 16.05(3) violates their Second Amendment rights, both facially and as-applied. Compl. ¶ 79.  Their claim fails as a matter of law because the load indicator regulation does not implicate the Second Amendment.  And even if it did, the regulation would withstand constitutional scrutiny because it is substantially related to the Commonwealth's important interest in promoting public safety.

### i.   The Load Indicator Regulation Does Not Implicate the Second Amendment

In McDonald v. City of Chicago, 130 S. Ct. 3020, 3036 (2010), and District of Columbia v. Heller, 554 U.S. 570, 635 (2008), the Supreme Court recognized the limited Second Amendment right, incorporated against the States, of an individual to possess a handgun in the home for self-defense.  Since Heller and McDonald, courts have analyzed Second Amendment claims by first asking whether the challenged enactment burdens conduct falling within the Second Amendment's protection, and if so, whether the enactment passes constitutional muster under an appropriate level of means-end scrutiny. See, e.g., Heller v. District of Columbia (Heller II), 670 F.3d 1244, 1252–53 (D.C. Cir. 2011); Ezell v. City of Chicago, 651 F.3d 684, 701–04 (7th Cir. 2011); United States v. Chester, 628 F.3d 673, 680 (4th Cir. 2010); United States v. Marzzarella, 614 F.3d 85, 89 (3d Cir. 2010).

The consumers' claim in this case fails at the first step of the analysis because the load indicator regulation does not implicate Second Amendment protections.  Heller emphasized that "the right secured by the Second Amendment is not unlimited." 554 U.S. at 626.  Accordingly, the Court explained,

> nothing in [Heller] should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.

Id. at 626–27.  Moreover, "th[o]se presumptively lawful regulatory measures only [served] as examples"; the Court's "list [did] not purport to be exhaustive."  Id. at 627 n.26; see also Marzzarella, 614 F.3d at 91 (certain gun laws regulate conduct outside the scope of the Second Amendment and are "exceptions to the

right to bear arms").  Since Heller, courts have concluded that many laws restricting access to firearms are

beyond the scope of the Second Amendment.  See, e.g., Peterson v. Martinez, 707 F.3d 1197, 1211 (10th

Cir. 2013) (concealed carry ban); United States v. White, 593 F.3d 1199, 1205–06 (11th Cir. 2010) (ban

on firearms possession by convicted perpetrators of domestic violence); United States v. Rene E., 583

F.3d 8, 16 (1st Cir. 2009) (ban on juvenile possession of handguns); Commonwealth v. McGowan, 464

Mass. 232, 244, 982 N.E.2d 495, 503 (2013) (Massachusetts safe storage law).

The load indicator regulation ranks among those measures that fall outside the scope of the Second

Amendment.  Heller made clear that "laws imposing conditions and qualifications on the commercial

sales of arms" are "presumptively lawful."  554 U.S. at 626–27 & n.26.[24]  The Attorney General's

Handgun Sales Regulations require only that state-licensed firearm dealers sell to the public handguns that

are not defective and do not "perform[] in a deviantly unsafe or unexpected way." Am. Shooting Sports

Council, 429 Mass. at 877, 711 N.E.2d 899, 904.  The purpose of the regulations "is to assure consumers

that the products they are purchasing, although dangerous, nonetheless are merchantable."  Id. at 883,

n.19, at 907 n.19.  The challenged regulation, requiring a handgun to contain a load indicator or magazine

safety disconnect prior to sale, therefore qualifies as a presumptively valid law that "impos[es] conditions

. . . on the commercial sale of arms" and does not implicate the Second Amendment.  Heller, 554 U.S. at

626–27 & n.26.

Moreover, nothing in Heller suggests that the Second Amendment guarantees consumers the right

to have access to any particular guns they desire.  To the contrary, Heller stressed that the Second

Amendment does not guarantee "a right to keep and carry any weapon whatsoever in any manner

whatsoever and for whatever purpose." 554 U.S. at 626; accord Rene E., 583 F. 3d at 12.  Consistent with

Heller, courts have concluded that firearms regulations that preserve citizens' access to handguns, even if

not the particular handgun a citizen might desire, do not infringe any Second Amendment right.  See, e.g.,

---

[24] Accord United States v. Chafin, 423 F. App'x 342, 344 (4th Cir. 2011) (nothing "remotely suggests that, at the time of its ratification, the Second Amendment was understood to protect an individual's right to *sell* a firearm"); Teixeira v. County of Alameda, 2013 WL 707043, at *6 (N.D. 2013) (ordinance placing limited qualifications on the sale of firearms was presumptively lawful and did not implicate the Second Amendment).

Kampfer v. Cuomo, 2014 WL 49961, at *6 (N.D.N.Y. 2014) ("[B]ecause the provisions at issue attempt only to decrease in number certain firearms deemed particularly dangerous by the legislature for the sake of public safety, . . . they do not infringe the Second Amendment").  "[T]he Second Amendment 'right to keep and bear arms,'" courts reason, does not "guarantee an individual right to possess whatever firearm he or she subjectively perceives to be necessary or useful for self-defense." Colorado Outfitters Ass'n, 2014 WL 3058518, at *13.

The load indicator regulation preserves citizens' access to handguns that may be used for self-defense.  It is not a ban on guns.  It does not make possession of any gun illegal.  Nor does it limit the right of any consumer to buy a handgun that contains a load indicator or magazine safety disconnect from a licensed dealer.  Indeed, plaintiffs themselves explain that although the regulation makes two models of handguns unmerchantable in Massachusetts, it otherwise allows for the purchase of a variety of handguns with appropriate safety devices.  Compl. ¶¶ 45–52, 69.2, 69.3.  Thus, the Complaint admits that plaintiff-consumers have a choice of handguns with which to exercise their Second Amendment rights.[25]  The fact that 16.05(3) bars sale by a licensed dealer of a particular model of a particular brand of handgun that plaintiffs want to buy does not give rise to a Second Amendment claim.  Marzzarella, 614 F.3d at 94 ("The mere fact that some firearms possess a nonfunctional characteristic should not create a categorically protected class of firearms on the basis of that characteristic.").

    **ii.**    **Even If the Load Indicator Regulation Implicates Second Amendment Rights, It Remains Constitutionally Permissible Because It Is Substantially Related to the Important Interest in Promoting Public Safety**

Even if this Court assumes that the load indicator regulation does implicate the consumer-plaintiffs' Second Amendment rights, it should nevertheless dismiss the Second Amendment claim because the regulation withstands constitutional scrutiny.  The First Circuit, like the other courts of appeals, has "consistently recognized that Heller established that the possession of operative firearms for

---

[25] Plaintiffs merely allege that they wish to buy from certain dealers a specific model of a specific brand of firearm that lacks safety devices. Their claim is that the Commonwealth's requirements thus interfere with (what they believe is) their Second Amendment right to have licensed dealers sell a particular defective make and model gun.

use in defense of the home constitutes the 'core' of the Second Amendment." Hightower v. City of
Boston, 693 F.3d 61, 72 (citing United States v. Booker, 644 F.3d 12, 25 n.17 (1st Cir. 2011)); see Heller,
554 U.S. at 634–35 (stating that the "core" protection of the Second Amendment is the "right of law-
abiding, responsible citizens to use arms in defense of hearth and home").  Other restrictions on the sale,
possession or use of firearms affect interests that are "distinct from this core interest emphasized in
Heller." Hightower, 693 F.3d 72.

The load indicator regulation and similar firearms safety measures fall well outside the "core"
Second Amendment right identified in Heller—to possess a firearm for self-defense in the home.
Restrictions on firearms storage, a species of firearms safety regulation, Heller explained, "do not
remotely burden the right of self-defense as much as an absolute ban on handguns."  554 U.S. at 632.
Indeed, Heller emphasized that its holding did not "suggest the invalidity of laws regulating the storage of
firearms to prevent accidents."  Id.

Since Heller, most courts have reviewed firearms safety regulations under, at most, intermediate
scrutiny. See, e.g., United States v. Masciandaro, 638 F.3d 458, 471, 473–74 (4th Cir. 2011) (regulation
prohibiting the carrying of a loaded handgun in a motor vehicle while in a national park upheld under
intermediate scrutiny); Colo. Outfitters Ass'n, 2014 WL 3058518, at *12, n. 19, 15–20 (upholding under
intermediate scrutiny statutes limiting the size of magazines and extending background checks).  Under
that standard, a court must ask whether the challenged enactment is "substantially related to an important
governmental objective."  Clark v. Jeter, 486 U.S. 456, 461 (1988); see also Kachalsky, 701 F.3d at 96.
The test requires "substantial deference to the predictive judgments" of the lawmaker.  Turner
Broadcasting Sys., Inc. v. FCC, 512 U.S. 622, 665 (1994).  To survive intermediate scrutiny, the fit
between the challenged regulation and the government interest "need only be substantial, not perfect."
Kachalsky, 701 F.3d at 97 (internal quotation marks omitted).

The regulation requiring load indicators or magazine safety disconnects on handguns sold in
Massachusetts, like the firearms storage regulations discussed in Heller, is a classic safety measure

19

designed "to prevent accidents." Heller, 554 U.S. at 632.  It does "not severely limit the possession of

firearms," Marzzarella, 614 F.3d at 97; indeed, it does not restrain a consumer from possessing a firearm

in her home or elsewhere, whether for self-defense or any other lawful purpose.  See Heller II, 670 F.3d at

1258.  It therefore merits, at most, intermediate scrutiny.  See Masciandaro, 638 F.3d at 471; Colo.

Outfitters Ass'n, 2014 WL 3058518 at *15, *19.

　　　　Assessed under that standard (indeed, assessed under any standard of review), the load indicator

regulation is constitutionally sound.  In promulgating the regulation, the Attorney General sought to

protect consumers from handguns that "fail fundamental requirements of safety and performance."  Am.

Shooting Sports Council, 429 Mass. at 877.  He aimed to promote public safety by prohibiting state-

licensed dealers from selling handguns with "harmful or unexpected risks or dangers" that "cannot be

detected by the average user or cannot be avoided by adequate disclosures or warnings."  Id.  This goal—

to promote public safety and prevent accidents caused by unsafe guns—is an important, and indeed,

compelling government interest.  See Hodel v. Virginia Surface Mining, 452 U.S. 264, 300 (1981)

("protection of the health and safety of the public is a paramount government interest"); Schenck v. Pro-

Choice Network, 519 U.S. 357, 376 (1997) (referring to the "significant governmental interest in public

safety"); Salerno, 481 U.S. at 745 (noting the government's "compelling interes[t] in public safety");

Masciandaro, 638 F.3d at 473 ("[T]he government has a substantial interest in providing for the safety of

individuals."); McGuire v. Reilly, 260 F.3d 36, 48 (1st Cir. 2001) ("[I]ncreas[ing] public safety" is an

interest "firmly rooted in the state's traditional police powers" and is "precisely the sort of interest[] that

justif[ies] some incidental burdening" of rights.).

　　　　The load indicator regulation is substantially related to that interest.  It identifies certain widely

accepted safety devices that address firearm-related hazards,[26] and requires that a firearm sold in-state by

_____

[26] Accidental firearm discharges are a serious safety concern.  See Commonwealth. v. McGowan, 464 Mass. 232, 242 n.7, 982
N.E.2d 495, 502 n.7 (2013) ("[I]n 2009 . . . firearm accidents killed an additional 114 children and teenagers.") (citing
Children's Defense Fund, Protect Children Not Guns, 2012, at 38).  Load indicators have been recognized as effective safety
devices in preventing accidental discharges. See Brian J. Siebel, City Lawsuits Against the Gun Industry: A Roadmap for
Reforming Gun Industry Misconduct, 18 St. Louis U. Pub. L. Rev. 247, 254–55 (1999) (citing 1991 GAO Report that found

a licensed dealer contain those devices.  It preserves choice for manufacturers and dealers:  Handguns may be sold with either a load-indicator or a magazine safety disconnect.  940 CMR 16.05(3).  And it preserves significant choice for consumers.  As plaintiffs admit, the regulation leaves individuals with a wide range of firearms that may be legally purchased.  Compl. ¶¶ 69.2, 69.3.  Because consumers may choose from any number of handguns that comply with the load indicator or magazine safety release requirements, 16.05(3) leaves intact the right to possess and carry firearms for self-defense in the home.

Moreover, the Handgun Regulations include several exemptions that allow sophisticated users to purchase handguns without safety devices if they so choose.  For example, consumers who are educational collectors or military and law enforcement personnel buying guns for their official duties are exempt from the requirements.  940 CMR 6.01.  The regulations also permit the transfer of "firearms solely designed and sold specifically for formal target shooting competition" and the private sale of firearms.  Id.  Thus, the regulations protect less experienced handgun users from the "harmful or unexpected risks" of handguns lacking safety devices, while allowing certain more experienced users to assume the risk of acquiring handguns without the challenged safety devices.  Cf. Springfield Armory, Inc. v. City of Columbus, 29 F.3d 250, 253 (6th Cir. 1994) ("[T]he average gun owner knows very little about how his gun operates or its design features.").

These features of the challenged regulation—its minimal impact on the range of firearms available for purchase in Massachusetts, coupled with the exemptions available for various experienced handgun users—demonstrate that it is "reasonably adapted to a substantial government interest."  Masciandaro,

---

certain types of injuries "could have been prevented by the incorporation of two simple safety devices into firearms—a grip safety and a chamber-loaded indicator").  Indeed, load indicators are included on a variety of semi-automatic handguns. See State v. Smith, 714 S.E.2d 275 (N.C. Ct. App. 2011) (referencing load indicator on Jimenez Arms 9 mm pistol); State v. Lewis, 48 So. 3d 1073, 1075 (La. 2010) ("[T]he expert testified that the [.22 caliber handgun] had a loaded chamber indicator and a cocked indicator, which make it 'pretty obvious [when] this weapon is cocked and loaded and ready to fire.'"); Smith ex rel. Smith v. Bryco Arms, 131 N.M. at 98, 33 P.3d at 649  ("Documents and advertisement flyers showed that recent handguns manufactured and distributed by Defendants have incorporated a magazine-out safety that blocks the trigger bar and disables the handgun so that it cannot fire when the magazine is removed, and a chamber load indicator device."); People v. Branion, 265 N.E.2d 1, 3 (Ill. 1970) (noting expert testimony that Walther PPK handgun has a load indicator). California prohibits the sale of pistols that lack either a load indicator or a magazine disconnect mechanism, and a range of firearms remain available for sale in that state.  See CAL. PENAL CODE § 31910; CAL. ROSTER OF HANDGUNS CERTIFIED FOR SALE, http://certguns.doj.ca.gov/.

638 F.3d at 471, 473–74 (regulation preventing the carrying of *loaded* firearms in cars traveling through national parks upheld in part because it preserved the option of carrying *unloaded* firearms).  The fit between the regulation and the public safety interest is apparent.  Many firearms remain available for purchase in Massachusetts, so long as they have one of two safety devices designed to prevent accidents and injuries.  The plaintiff-consumers' Second Amendment claim should accordingly be dismissed for the additional reason that the load indicator regulation is substantially related to the Attorney General's public safety objective.

## V.    IN THE ALTERNATIVE, THE COURT SHOULD EXERCISE ABSTENTION

If the Court determines that the meaning of 16.05(3) remains uncertain and does not dismiss this case, the Attorney General requests that the Court exercise Pullman abstention and refer the matter to the State Court system for adjudication of the underlying state law issues in the first instance.  Abstention under the Pullman doctrine is invoked by federal courts in order to avoid declaring a state statute unconstitutional and deciding a constitutional issue unnecessarily.  The doctrine recognizes federalism concerns, respect for state sovereignty, and the value of getting an authoritative decision on a question of state law from the state court.  Railroad Comm'n of Tex. v. Pullman Co., 312 U.S. 496 (1941).  See also Harrison v. NAACP, 360 U.S. 167, 176 (1959) ("this now well-established procedure is aimed at the avoidance of unnecessary interference by the federal courts with proper and validly administered state concerns, a course so essential to the balanced working of our federal system.); Pustell v. Lynn Pub. Schs., 18 F.3d 50, 53 (1st Cir. 1994) ("We decline to create 'needless friction' with state and local policies.") (quoting Pullman).  Pullman abstention is appropriate when there is substantial uncertainty over the meaning of the state law in question[27] and settling the state law question may obviate the need to resolve a significant federal constitutional question or significantly modify a federal question.  See Bellotti v. Baird, 428 U.S. 132, 146-48 (1976) (Massachusetts statute); Harrison, 360 U.S. at 177 (where

---

[27] Ford Motor Co. v. Meredith Motor Co., 257 F.3d 67, 71 (1st Cir. 2001); cf. Hawaii Hous. Auth. v. Midkiff, 467 U.S. 229, 236 (1984); Rivera-Puig v. Garcia-Rosario, 983 F.2d 311, 322 (1st Cir. 1992).

Court could not agree whether the statutes left room for state court construction, abstention was appropriate); Ford Motor Co. v. Meredith Motor Co.Inc, 257 F.3d 67, 71 (1st Cir. 2001).

If plaintiffs' claims are to be taken at face value, substantial uncertainty exists over the meaning of the load indicator provision. This uncertainty is relevant both for the vagueness claims (where an interpretation may eliminate vagueness) and the Second Amendment claims (where an interpretation may have an impact on the scope and therefore the purported burden imposed by the regulation).[28] A federal court faced with a constitutional challenge to a regulation that requires further interpretation "should abstain, absent compelling circumstances, in order to allow the state agency and the state courts first review of the interpretation of state law at issue and to avoid unnecessary constitutional adjudication." United Home Rentals, Inc. v. Texas Real Estate Comm'n, 716 F.2d 324, 334 (5th Cir. 1983). Such a course can bring the scope of the regulations "within the bounds of permissible constitutional certainty." Babbitt v. United Farm Workers Nat. Union, 442 U.S. 289, 308 (1979) (quoting Baggett v. Bullitt, 377 U.S. 360, 378 (1964)); see also Casiano-Montanez v. State Ins. Fund Corp.,707 F.3d 124, 129 (1st Cir. 2013); Greater New York Metro. Food Council v. McGuire, 6 F.3d 75, 77–78 (2d Cir. 1993). Indeed, even when it is only possible (rather than likely or reasonably possible) that the state court can construe the state law, courts have found Pullman abstention warranted. Reetz v. Bozanich, 397 U.S. 82, 86–87 (1970); cf. Fornaris v. Ridge Tool Co., 400 U.S. 41, 44 (1970).

If the case is not dismissed, abstention is appropriate here. The regulation being interpreted was promulgated under Massachusetts General Law Chapter 93A, an area in which the state courts have played an important interpretive role. See, e.g., Tyler v. Michaels Stores, Inc., 464 Mass. 492, 984 N.E.2d 737 (2013) (interpreting provisions of 93A); Jeffreys v. Cooney, 61 Mass. App. Ct. 1113, 810 N.E.2d 1288 (2004) (unpublished) (interpreting real estate regulations in 93A claim); Knapp Shoes, Inc. v. Sylvania Shoe Mfg. Corp., 418 Mass. 737, 738, 640 N.E.2d 1101, 1102 (1994) (certification of questions interpreting regulations promulgated under 93A). Under the Consumer Protection Act, the

---

[28] Of course, this relevance only applies if the Court allows the claims to survive a motion to dismiss. The Commonwealth maintains that the vagueness and Second Amendment claims fail, and seeks abstention only in the alternative.

Supreme Judicial Court is expected by the legislature "to discover and make explicit those unexpressed standards of fair dealing which the conscience of the community may progressively develop." Com. v. DeCotis, 366 Mass. 234, 242, 316 N.E.2d 748, 754  (1974) (quoting Federal Trade Comm'n. v. Standard Educ. Soc., 86 F.2d 692, 696 (2d Cir. 1936)).  Further interpretation of such a statute and its regulations is an ongoing project, and should be left to the state courts in the first instance.  Cf. Kansallis Finance Ltd. v. Fern, 40 F. 3d 476, 481 (1st Cir. 1994) ("We have found no controlling Massachusetts precedent on this issue, which is determinative of the 93A claim.  We therefore think it is appropriate to certify the question to the [Supreme Judicial Court].").

## VI.    CONCLUSION

Plaintiffs lack standing and have not pled claims upon which relief can be granted.  Therefore, the Complaint should be dismissed.  In the alternative, the Court should abstain from deciding the case until Massachusetts courts have had a full opportunity to interpret the underlying regulation.

Respectfully Submitted,
MARTHA COAKLEY
ATTORNEY GENERAL

/s/ Glenn Kaplan_____
Glenn Kaplan, BBO# 567308
Assistant Attorney General
Office of the Attorney General
One Ashburton Place, 18th Floor
Boston, MA 02108
(617) 727-2200

Dated: August 25, 2014                    Glenn.Kaplan@state.ma.us

## CERTIFICATE OF SERVICE

I hereby certify that this document was filed through the Electronic Case Filing (ECF) system and thus copies will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF); paper copies will be sent to those indicated on the NEF as non registered participants on or before August 25, 2014.

/s/ Glenn Kaplan_____
Glenn Kaplan, BBO# 567308
Assistant Attorney General