# Exhibit "A"

# Researching, Interpreting, Challenging, and Applying Regulations in Massachusetts

**Hon. James P. Rooney**, Commonwealth of Massachusetts Division of Administrative Law Appeals

**Robert L. Quinan, Jr.**, Managing Attorney, Office of the Attorney General

**Brian Harkins**, Senior Reference Attorney, Social Law Library

Thursday, October 24, 2013
4:30 P.M. to 6:30 P.M.
Social Law Library

# Advocating for Favorable Judicial Treatment of Regulations
## ~ Or ~
## Challenging a Regulation in Court

*by*

*Robert L. Quinan, Jr.*[1]

## PART ONE

### I. A Rational Agency Interpretation of its Own Regulation Normally Should Be Accorded Considerable Judicial Deference.

**A. Usually, an administrative agency's interpretations of its own rules or regulations is entitled to, and will be accorded, great weight by the judiciary.**

In the absence of clear error, "[a]n agency's construction of its own regulation . . . is one to which considerable deference is due." *Northbridge v. Natick*, 394 Mass. 70, 74 (1985). *See also McGuiness v. Dep't of Correction*, 465 Mass. 660, 664 (2013) (stating that "an agency's interpretation of its own rule is entitled to great weight"); *Norwood Hosp. v. Comm'r of Pub. Welfare*, 417 Mass. 54, 58 (1994) (same; agency interpretation "should only be overturned if it is arbitrary or unreasonable"); and concordant cases collected in § 748 of Vol. 39 Mass. Prac., Administrative Law & Practice (West 2013). A principal reason for this strong judicial deference is likely a pervading sense of judicial respect for the Legislature's prerogative in conferring power (whether delegated law-making or expository power) on an agency.

Similarly, the federal *Seminole Rock/Auer* doctrine requires a court to accept an agency's interpretation of its own regulation (give it "controlling weight") so long as the agency's construction is not "plainly erroneous or inconsistent with the regulation." *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945). *Auer v. Robbins*, 519 U.S. 452 (1997), strongly reaffirmed the *Seminole Rock* principle of judicial deference to an agency's reasonable construction of its own regulations. Among the many substantial benefits of *Seminole Rock/Auer* deference are the increased reliance on expert judgment and political accountability. Agencies are virtually always better situated than courts to make technical judgments in their fields: agencies are staffed by experts whereas courts are run by generalists. Likewise, agencies are also better placed than courts to make policy judgments. Agencies are subject to (admittedly indirect) political accountability via regular elections; judges, by contrast, enjoy tenure and salary protection precisely to insulate them from political pressures.

---

[1] AAG Rob Quinan is the Managing Attorney of the Attorney General's Administrative Law Division in Boston. The views expressed in this handout are the author's personal views and do not necessarily represent any opinion of the Office of the Attorney General. The handout was prepared in connection with an October 2013 CLE program sponsored by the Social Law Library. Copyright © 2013 by Robert L. Quinan, Jr.

### B. Contemporaneous and long-standing agency interpretations of law are most likely to garner judicial deference.

When an administrative agency promulgates interpretative rules or regulations around the time of the enactment of a statute conferring power on the agency, Massachusetts courts will tend to give authoritative weight to that construction or interpretation of the governing statute. *See, e.g., Biogen IDEC MA, Inc. v. Treasurer and Receiver General*, 454 Mass. 174, 187 (2009); *Wellington v. Comm'r of Corps. and Taxation*, 359 Mass. 448 (1971). Likewise, Massachusetts appellate courts typically accord considerable weight to rules or regulations whose construction and interpretation have been consistently applied for a long period of time by the agency. *See, e.g., Haley v. Comm'r of Pub. Welfare*, 394 Mass. 466 (1985); *Namay v. Contributory Retirement Appeal Board*, 19 Mass. App. Ct. (1985); and cases cited in Cella, et al., 39 Mass. Practice Series, Administrative Law & Practice § 749. Although both factors need not be present, the Supreme Judicial Court has declared a consistently applied, longstanding regulation to be the "best proof" of a proper interpretation of an ambiguous statute. *Cleary v. Cardullo's, Inc.*, 347 Mass. 337, 343-344 (1964). Professor Cella's treatise explains: "The essential rationale underlying the judicial policy of attaching weight or significance to contemporaneous and longstanding constructions or interpretations of the governing statute embodied in an agency rule or regulation is that the Legislature, by failing to act to amend or repeal such constructions or interpretations by legislation, has silently acquiesced in the rule or regulation which ought, therefore, to be permitted to stand." 39 Mass. Prac. § 749.

Note, however, that courts have consistently held that interpretive authority follows rulemaking power, rather than adjudicative power, when the two are divided. "Where a regulation has been duly promulgated, [courts] do not give deference to a *different* administrative agency's contrary conclusion." *Massachusetts Teachers' Ret. System v. Contributory Ret. Appeal Bd.*, 466 Mass. 292, 297 (2013) (citing 1 R.J. Pierce, Jr., Administrative Law Treatise § 3.5, at 197-198 (5th ed. 2010)) (emphasis added). If such a regulation reflects a reasonable interpretation of the authorizing statute, an adjudicating tribunal has an obligation to follow it. *Id.*

### C. When courts do *not* defer:

- Agencies are testing the limits of jurisdictional authority: *see Tartarini v. Dep't of Mental Retardation*, 82 Mass. App. Ct. 217 (2012) and *Meyer v. Town of Nantucket*, 78 Mass. App. Ct. 385 (2010);

- A new regulation is being applied retroactively: *see Biogen IDEC MA, Inc. v. Treasurer*, 454 Mass. 174 (2009) and *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2167-68 (2012);[2]

---

[2] In *Christopher*, the Supreme Court withheld deference because to defer to the agency in that case would "require regulated parties to divine the agency's interpretations in advance or else be held liable when the agency announces its interpretations for the first time in an enforcement proceeding." 132 S.Ct. at 2168.

- When the agency's interpretation is in "tension with the structure and purposes" of the authorizing statute: *E.g., Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 401-02 (2008) and *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2170-73 (2012);

- When the agency's interpretation defies the plain text of the regulation: *E.g., Christensen v. Harris County*, 529 U.S. 576, 586-88 (2000) and *Manor v. Superintendent, Massachusetts Corr. Inst., Cedar Junction*, 416 Mass. 820, 824 (1994) (no deference because agency interpretation of the regulation was inconsistent with the plain meaning of the regulation);

- When the regulation being interpreted either merely "parrot[s]" the statutory language or is so vague as to be virtually meaningless: *E.g., Gonzales v. Oregon*, 546 U.S. 243, 257 (2006) and *Paralyzed Vets. of Am. v. D.C. Arena LP.*, 117 F.3d 579, 584 (D.C. Cir. 1997) (agency may not "promulgate mush and then give [the regulation] concrete form only through subsequent less formal 'interpretations'");

- When the agency's interpretation runs afoul of established canons of interpretation: *E.g., Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 668-69 (2007) (interpretation would have rendered regulatory term "mere surplusage") and *Warcewicz v. Dep't of Environ. Protection*, 410 Mass. 548, 550-51 (1991);

- When the agency's interpretation of a regulation is haphazardly inconsistent: *E.g., Morin v. Comm'r of Dep't of Public Welfare*, 16 Mass. App. Ct. 20, 24 (1983); or

- When the agency shifts its interpretation in litigation to advance ulterior goals: *E.g., Christopher v. SmithKline*, 132 S. Ct. at 2167 (deferring to the agency's shifting litigation position would "seriously undermine the principle that agencies should provide regulated parties 'fair warning of the conduct [a regulation] prohibits or requires.'")

In *Finkelstein v. Board of Registration in Optometry*, 370 Mass. 476, 478 (1976), the Supreme Judicial Court cautioned:

> The board has been granted rule making authority . . . but once having exercised this power it cannot thereafter arbitrarily construe and apply its rules which as promulgated have dimensions and content not subject to infinite manipulation and expansion. To hold otherwise would be to permit the board, when seeking to amend or add to its rules, to substitute aggressive interpretation for the rule making procedure provided by the Legislature in G.L. c. 30A.

The Supreme Judicial Court has summed matters up by stating that the "principle" of judicial acquiescence in an agency's interpretation of its own law "is one of deference, not abdication, and courts will not hesitate to overrule agency interpretations of rules when those interpretations are arbitrary, unreasonable or inconsistent with the plain terms of the rule [or statute] itself." *Finkelstein*, 370 Mass. at 478.

### D. Current deference jurisprudence is, at best, muddled.

"[C]ourts have no intelligible approach to regulatory interpretation." Kevin Stack, Interpreting Regulations, 111 Mich. L. Rev. 355, 355 (Dec. 2012). Academics like Stack have criticized the Supreme Court for failing to develop any guidelines for the application of particular interpretive tools. Whereas in *Seminole Rock* the Court advised that its "tools . . . are the plain words of the regulation and any relevant interpretations of the Administrator," 325 U.S. at 414, the Court later has ranged far beyond an acute focus on plain meaning and deployed a large set of interpretive tools in determining whether an agency's construction is permissible. The Court, for example, has relied on the agency head's intent at the time of the regulation's promulgation, canons of statutory construction, the consistency of the agency's interpretation over time, the regulation's own procedural history, and the consistency with the agency's statement of basis and purpose. Stack, *supra*, at 372-73 & nn. 78-83. There is no coherent method being applied to the process of regulatory interpretation and one strains to discern a consistent body of law.

The primary goal of regulatory interpretation should be to implement the purpose or aim of the regulation, so long as the latter is consistent with statutory authorization, and the most privileged interpretive sources are the regulatory text and any accompanying statement of basis and purpose. When such a statement is lacking or unhelpful, courts may infer purpose from the policy context and a broad array of sources. Under this purposive approach, as advocated by Professor Stark, "the court is not to determine its own best reading of the regulation's text or its own best construction of the regulation's purposes by looking only at the regulation's text. Instead, the court determines the regulation's purpose by discerning the agency's own understanding of that purpose, as reflected both in the regulatory text and the agency's statement of basis and purpose [or other trustworthy indicators of agency intent]." 111 Mich. L. Rev. at 398. In other words, courts normally should defer to the agency's own views, if reasonably articulated, of the rationale, objectives, and limits of the regulation in question.

Many facets of regulatory interpretation remain unsettled. The federal *Auer* doctrine, in particular, raises a thorny issue: unlike the *Chevron* deference doctrine, *Auer* applies when an agency not only interprets but authors the relevant text (the regulation). This merging of interpretive and legislative functions raises serious separation of powers concerns that are unique to *Auer*. As Justice Scalia observed in a 2011 concurring opinion: "It seems contrary to fundamental principles of separation of powers to permit the person who promulgates a law to interpret it as well."[3] The concern, of course, is that "agencies will promulgate vague and open-

---

[3] *Talk America, Inc. v. Mich. Bell Tell. Co.*, 131 S. Ct. 2254, 2266 (2011) (Scalia, J., concurring). One should bear in mind, however, that "[u]nder many statutes, agency rulemaking does not make new law; instead [the regulation] simply commits the agency to a particular exposition of existing law." Aneil Kovvali, Note, Seminole Rock and the Separation of Powers, 36 Harv. J.L. & Pub. Pol'y 849, 872 (Spring 2013).

ended regulations that they can later interpret as they see fit." *Christopher v. SmithKline*, 132 S. Ct. at 2168.

Justice Scalia was even more adamant in his 2013 concurring and dissenting opinion in *Decker v. Northwest Environmental Defense Center*. He wrote that courts have been giving agencies *Auer* deference "for no good reason," asserting that an agency's intent and expertise "has nothing to do with who should interpret regulations." 133 S. Ct. at 1339-40. Scalia focused again on the separation of powers concern, the perceived "incentive" for agencies to promulgate vague regulations, and the role of the courts in determining the "fairest" reading of statutes and regulations. 133 S. Ct. at 1341-42. While the majority opinion followed *Auer* wholeheartedly in stating that it is "well established that an agency's interpretation need not be the only possible reading of a regulation—or even the best one—to prevail," 133 S. Ct. at 1337, Chief Justice Roberts in a short concurring opinion (in which Justice Alito joined) showed an openness to "reconsider" *Auer* in a future case where the issue was fully briefed. 133 S. Ct. at 1339. This shows that there is a fair chance that the *Auer* doctrine may be narrowed by a future Supreme Court opinion, if not eliminated altogether as Justice Scalia may prefer.

E. **Factors that can influence whether a court endorses the agency's interpretation:**

- Whether agency's interpretation is of longstanding duration[4]

- Whether interpretation is faithful to expressed intent at time of rule promulgation[5]

- Whether interpretation comports with statutory language and purpose

- Whether interpretation is supported by canons of statutory construction

---

[4] The courts' preference for longstanding interpretations does not necessarily bar an agency from altering its interpretation in a particular situation. To the contrary, on a case-by-case basis, an agency "should be permitted to make refinements and even new rules in light of past experience." *West Bridgewater Police Ass'n v. Labor Relations Comm'n*, 18 Mass. App. Ct. 550, 555 (1984). "Yet such new rules and refinements on old rules may not be fashioned at the expense of governing statutes and their basic policies." *Service Employees Int'l Union, AFL-CIO, Local 509 v. Labor Relations Comm'n*, 431 Mass. 710, 721 (2000).

[5] "Deference to an agency's interpretation of statutory silence, or ambiguity, is particularly appropriate where . . . the regulation in question was promulgated immediately after the enactment of the governing legislation." *Mass. Teachers' Ret. System v. CRAB*, 466 Mass. at 301; *and see id.* (quoting *Biogen IDEC MA, Inc. v. Treasurer*, 454 Mass. 174, 187 (2009), and *Connery v. Comm'r of Correction*, 414 Mass. 1009, 1010 (1993) (interpretation made close to time Legislature enacted statute is entitled to "heightened" deference because it "may represent 'understanding of the public regarding the enactment'")). It might also reasonably be expected that the agency, as the entity that originally drafted and enacted the regulation in question, has special insight into its meaning. Matthew Stephenson & Miri Poriler, Seminole Rock's Domain, 79 Geo. Wash. L. Rev. 1449, 1454 (July 2011). *See Martin v. Occupational Safety & Health Review Comm'n*, 499 U.S. 144, 152-53 (1991).

- Whether regulation itself was the product of thoughtful, reasoned deliberation[6]

- The complexity of the regulatory scheme (*i.e.*, the notion that agencies have a special understanding of how different parts of a complicated regulatory scheme fit together)

As will be further developed in Part Two, a party attempting to show that an agency's determination of its own rules is not rational bears a "formidable" burden. *See Conservation Comm'n of Brockton v. Dep't of Environmental Protection*, 81 Mass. App. Ct. 601, 605 (2012).

---

[6] In *Mass. Teachers' Ret. System v. CRAB*, the Supreme Judicial Court upheld the agency's interpretation of law where the regulatory history indicated that the regulation in question "was the product of 'thoughtful, reasoned deliberation,' and not 'rash, uninformed rulemaking[.]'" 466 Mass. at 302 (quoting *Biogen IDEC MA, Inc. v. Treasurer*, 454 Mass. at 189).

### PART TWO

## II. SUBSTANTIVE CHALLENGES TO STATE REGULATIONS RARELY SUCCEED, BUT ULTRA VIRES OR PROCEDURAL ATTACKS MAY BE EASIER TO MOUNT.

A successful facial challenge to state regulations requires surmounting high hurdles, but questioning the authority of an agency to promulgate a challenged regulation has sometimes borne fruit.

### A. Due to the Great Deference Courts Accord Administrative Regulators, Challenges to the Substance of Regulations Are Rarely Successful.

Because a "highly deferential standard of review governs a facial challenge to regulations," Mass. Fed'n of Teachers, AFT, AFL-CIO v. Board of Educ., 436 Mass. 763, 771 (2002), any plaintiff "shoulder[s] a formidable burden" in trying to dislodge a regulation. Greenleaf Fin. Co. v. Small Loans Regulatory Bd., 377 Mass. 282, 293 (1979). "A duly promulgated regulation is presumptively valid; like a statute, it enjoys all reasonably favorable interpretations for its effective operation." Prof'l Fire Fighters of Mass. v. Commonwealth, 72 Mass. App. Ct. 66, 80 (2008) (citing cases).[7]

To prove a facial challenge to an agency regulation, a plaintiff must show that the regulation is "illegal, arbitrary, or capricious," and to do so "must establish 'the absence of any conceivable grounds upon which [the rule] may be upheld.'" Mass. Fed'n, 436 Mass. at 771, quoting Purity Supreme, Inc. v. Att'y Gen., 380 Mass. 762, 776 (1980).[8] Because "a properly promulgated regulation has the force of law," Borden, Inc., 388 Mass. at 723, courts "must apply all rational presumptions in favor of the validity of the administrative action." Consolidated Cigar Corp. v. Dep't of Pub. Health, 372 Mass. 844, 855 (1977). "Regulations are not to be declared void unless their provisions cannot by any reasonable construction be interpreted in harmony with the legislative mandate, and enforcement of such regulations should be refused only if they are plainly in excess of legislative power." Berrios v. Dep't of Pub. Welfare, 411 Mass. 587, 595-96 (1992). *Accord* Arbella Mut. Ins. Co. v. Comm'r of Ins., 456 Mass. 66, 77 (2010). *See also* Consolidated Cigar Corp., 372 Mass. at 855.[9]

Where agencies "possess expertise in their areas of specialization," judges may not "substitute [their] judgment as to the need for a regulation, or the propriety of the means

---

[7] "Municipal health and safety regulations" also "carry a heavy presumption of validity[.]" Arthur D. Little, Inc. v. Comm'r of Health & Hosp. of Cambridge, 395 Mass. 535, 546 (1985).

[8] Plaintiff's "burden cannot be carried 'by arguing that the record does not affirmatively show facts which support the regulation.'" Dowell v. Comm'r of Transitional Assistance, 424 Mass. 610, 612 (1977), quoting Purity Supreme, supra, at 776.

[9] However, "a regulation that is irreconcilable with an agency's enabling legislation cannot stand." Quincy v. Massachusetts Water Resources Auth., 421 Mass. 463, 468 (1995). *See also* In re Spaniol's Case, 466 Mass. 102, 110 (2013) ("An agency regulation that is contrary to the plain language of the statute and its underlying purpose may be rejected by the courts") (quoting Smith v. Commissioner of Transitional Assistance, 431 Mass. 638, 646 (2000)).

chosen to implement the statutory goals." Mass. Fed'n, 436 Mass. at 773. Rather, the regulating agency enjoys considerable latitude and may not be second-guessed by reviewing courts. See Prof'l Fire Fighters, 72 Mass. App. Ct. at 80 (stating that agency "may exercise considerable leeway in the interpretation of its enabling legislation, and may define the legislation more precisely by regulation").[10] This deferential approach "is necessary to maintain the separation between the powers of the Legislature and administrative agencies and the powers of the judiciary." Id., quoting Borden, Inc. v. Comm'r of Pub. Health, 388 Mass. 707, 723 (1983).

Plenary review of administrative regulations "would have an unhealthy tendency to substitute the court for the agency as policymaker." Cambridge Elec. Light Co. v. Dep't of Pub. Utils., 363 Mass. 474, 491 (1973). "Administrative agencies possess expertise in their areas of specialization, and '[r]egulations are good indicators of an agency's interpretation of a statute it is charged with administering.'" Mass. Fed'n, 436 Mass. at 772, *quoting* American Family Life Assur. Co. v. Comm'r of Ins., 388 Mass. 468, 475 (1983). Judicial deference "also precludes the possibility that a plaintiff may frustrate administrative policy merely by amassing facts, statistics, and testimony before a judge, all of which may have little or nothing to do with the legislative facts which the administrative agency relied upon in making its regulation." Borden, Inc., 388 Mass. at 723. "[R]espect for the legislative process means that it is not the province of the court to sit and weigh conflicting evidence supporting or opposing a legislative enactment." Id., *quoting* Shell Oil Co. v. Revere, 383 Mass. 682, 687 (1981).

## B. Challenges to the Legal Authority of an Agency to Adopt the Regulation in Question Are More Common than Substantive Challenges.

In all likelihood, the number of successful court challenges to regulations on substantive policy grounds is significantly outweighed by the number of court decisions invalidating agency regulations as being beyond the scope of the authority conferred by the Legislature on the agency. As the Supreme Judicial Court held in Sturdy v. SOMWBA, 409 Mass. 587 (1991), an agency has no inherent authority, absent statutory authorization, to adopt regulations. Yet an administrative agency generally does "ha[ve] the authority to promulgate regulations giving effect to [specific] legislative mandates." Mass. Fed'n, 436 Mass. at 773, *citing* Thomas v. Comm'r of the Div. of Med. Assistance, 425 Mass. 738, 746 (1997). Even a limited grant of regulatory authority may be insufficient, however, if the agency strays too far from its statutory mandate. See, e.g., Greater Boston Real Estate Board v. Board of Registration of Real Estate Brokers & Salesmen, 405 Mass. 360 (1989) (narrow grant of regulatory authority led court to conclude that the Board lacked power to promulgate regulations about deposits – an aspect of sales contracts negotiated between buyer and seller); Life Ins. Ass'n of Mass. v. Comm'r of Insurance, 403 Mass. 410 (1988) (regulation

---

[10] See also Worcester Sand & Gravel Co. v. Bd. of Fire Prevention Regulations, 400 Mass. 464, 467 (1987) (where question whether any conceivable ground exists to uphold regulation is fairly debatable, court cannot substitute its judgment for that of agency); Levy v. Board of Registration and Discipline in Medicine, 378 Mass. 519, 525 (1979) (agency has "wide range of discretion" where Legislature has delegated broad grant of authority). As the Court stated in Mass. Fed'n: "It is not our function to consider the expediency of [a regulation] or the wisdom of its provisions." 436 Mass. at 772.

prohibiting testing for HIV went beyond specific rulemaking authority to regulate policy forms and content). "[An] agency may not exceed those powers and obligations expressly conferred on it by statute or reasonably necessary to carry out the purposes for which the statute was enacted." Mass. Fed'n, 436 Mass. at 773.[11]

On the other hand, where there is a "broad grant of authority to implement a program of reform or social welfare, the administrative agency generally has a wide range of discretion in establishing the parameters of its authority pursuant to the enabling legislation." Mass. Auto Body Ass'n, Inc. v. Comm'r of Insurance, 409 Mass. 770, 775 (1991) (upholding regulation of repair shops under the Automobile Insurance Reform Act). Indeed, "[w]here the focus of a statutory enactment is reform, the administrative agency charged with its implementation should construe it broadly so as to further the goals of such reform." Mass. Fed'n, 436 Mass. at 774, citing Levy v. Bd. of Reg. in Med., 378 Mass. at 525. Because an express conferral of delegated authority to implement a legislative reform mandate "carries with it by implication all incidental authority required for the full and efficient exercise of the power conferred[,] . . . a regulation need not be 'traced to specific words' in a statute[12] because '[a]n agency's powers to promulgate regulations 'are shaped by its organic statute taken as a whole[.]'" Ciampi v. Comm'r of Correction, 452 Mass. 162, 168-69 (2008).[13]

In assessing the legality of an administrative agency's properly promulgated regulations, Massachusetts courts are to employ, sequentially, two well-defined principles. First, so the Supreme Judicial Court has directed, the court shall "determine, using conventional tools of statutory interpretation, whether the Legislature has spoken with certainty on the topic in question, and if [it] conclude[s] that the statute is unambiguous, [it shall] give effect to the Legislature's intent." Goldberg v. Board of Health of Granby, 444 Mass. 627, 632-33 (2005) ("Granby"). *See* Smith v. Comm'r of Transitional Assistance, 431 Mass. 638, 646 (2000) ("An agency regulation that is contrary to the plain language of the statute and its underlying purpose may be rejected by the courts"). Second, "if the Legislature has not addressed directly the pertinent issue," the court shall "determine whether the agency's resolution of that issue may 'be reconciled with the governing legislation.'" Granby, 444 Mass. at 633, *quoting* Nuclear Metals, Inc. v. Low-Level Radioactive Waste Mgt. Bd., 421 Mass. 196, 211 (1995). The Granby decision also cited to the leading federal case in this area: Chevron U.S.A. Inc. v. Natural Resources Defense Council, 467 U.S. 837 (1984), which describes, at pages 842-843, the two-part test used in Federal courts to ascertain the validity of challenged agency regulations. The second stage of the court's analysis requires "substantial deference" to the expertise and statutory "interpretation of [the] agency charged with primary responsibility" for administering a statute. Granby at 633, *citing* Briggs v. Commonwealth,

---

[11] Citing Telles v. Comm'r of Ins., 410 Mass. 560, 564-65 (1991), and Saccone v. State Ethics Comm'n, 395 Mass. 326, 335 (1985).

[12] *See also* Grocery Mfrs. of Am., Inc. v. Dep't of Pub. Health, 379 Mass. 70, 75 (1979) (authority for regulation need not be pinpointed to specific statutory language).

[13] In the above-quoted excerpt from Ciampa, the Court first quotes, and cites where the ellipsis points appear, New Engl. Med. Ctr., Inc. v. Rate Setting Comm'n, 384 Mass. 46, 52-53 (1981), and then, after the ellipsis, the Court quotes from Purity Supreme, Inc., 380 Mass. at 770, which in turn quotes Commonwealth v. Cerveny, 373 Mass. 345, 354 (1977).

429 Mass. 241, 253 (1999), and Berrios v. Dep't of Pub. Welfare, 411 Mass. at 595. At the second stage, regulations "are not to be declared void unless their provisions cannot by any reasonable construction be interpreted in harmony with the legislative mandate." Berrios at 595-596. As a result, a "[S]tate administrative agency in Massachusetts has considerable leeway in interpreting a statute it is charged with enforcing," unless a statute unambiguously bars the agency's approach. Id., quoting A. Cella, Administrative Law and Practice § 747 (1986).[14]

Frequently, noted the Granby court, "administrative agencies are charged, implicitly or explicitly, with the task of crafting regulations that are more detailed than statutes and tailored to more situations than the legislation specifies." 444 Mass. at 633, *citing* Chevron, *supra*, 467 U.S. at 843-844. "In examining the regulatory response to statutory silence or ambiguity, it is unimportant," said the Granby court, "whether we would have come to the same interpretation of the statute as the agency." 444 Mass. at 633. "Statutory silence, like statutory ambiguity, often requires that an agency give clarity to an issue necessarily implicated by the statute but either not addressed by the Legislature or delegated to the superior expertise of agency administrators." Id. at 634, citing 1 R.J. Pierce, Jr., Administrative Law § 3.4 (4th ed. 2002). "Administrative agencies are more suited to the task of clarifying the Legislature's plan through specific rules, and more able to provide for 'consistency and coherence,' than are courts." Id. (citing the Pierce treatise, § 3.4, at 150). "[Judicial] deference is especially appropriate [when] the statutes in question involve an explicit, broad grant of rule-making authority." Granby at 634, citing Dowell, *supra*, 424 Mass. at 613-614 (court must consider "broad authority granted the department"), and Chevron, *supra*, at 844 (regulations promulgated under explicit grant of authority "are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute").

When deciding whether challenged regulations are *ultra vires*, Massachusetts appellate courts appear to examine closely whether the policy reflected in the regulation advances a function the Legislature has delegated to the agency. *See, e.g.,* Ciampi, *supra*, at 168 (challenged regulations authorizing deductions from inmate accounts as restitution for misconduct "serve[] several penological functions" and "are reasonably related to the overarching goal of maintaining safety and discipline in prisons"); Water Dep't of Fairhaven v. Dep't of Environ. Protection, 455 Mass. 740, 747 (2010) (water conservation measures advance an important purpose of the state Water Management Act and the Legislature gave DEP "broad authority to issue regulations to carry out this purpose").

## C. Court Challenges Can Succeed When An Agency Should Have Promulgated Regulations, But Did Not.

The recent Water Dep't of Fairhaven case illustrates, however, the difficulties that can befall an agency when it fails to promulgate regulations. The Court pointed out that although the Water Management Act confers "substantial authority" on the Department of Environmental

---

[14] In Duarte v. Comm'r of Revenue, 451 Mass. 399 (2008), the Court declared: "Only an agency regulation that is contrary to the plain language of the statute and its underlying purpose may be rejected by the courts." Id. at 408.

Protection to carry out the purposes of the Act, which include water conservation, that power can only be exercised through the adoption of regulations. 455 Mass. at 749. "If the department wishes to require [towns] to take specified conservation measures, it must do so by regulation." Id.[15] When the DEP also gave municipal water departments the right to an adjudicatory hearing upon imposition of conservation measures, the plaintiffs argued that the DEP's adjudicatory process also was *ultra vires* because the Act does not explicitly authorize such proceedings. Id. at 750. The Court, however, returned to the agency's "wide authority to interpret and implement a policy set out broadly in its governing statutes." Id. In Mass. Respiratory Hosp. v. Dep't of Pub. Welfare, 414 Mass. 330, 333 (1993), the Court held that the DPW had the authority to adopt a regulation creating a Medicaid claims review board even though "no statutory language explicitly authorized the adoption of such a regulation." So, too, in Water Dep't of Fairhaven, the Court concluded that the DEP has the regulatory authority to create an administrative adjudicatory proceeding for those seeking to challenge adverse decisions it renders. Id. Notwithstanding that authority, "[t]he fatal flaw with the adjudicative process that the department has furnished to [plaintiffs] is that it was not authorized by regulation." Id. at 751.

**D. Questions to Ponder Before Challenging a Regulation**

1. Does the statutory scheme cited as the regulatory authority for the regulation in question show that the Legislature has authorized or condoned the promulgation of that regulation?

2. Does the authorizing statute contain an explicit or inferential grant of interstitial rulemaking authority?

3. Is the legislative purpose of the authorizing act readily determinable from its express language?

4. Is the regulation reasonably related to the objective of, or within the ambit of, the enabling statute?

5. Can the regulation be viewed as being "in harmony" with the legislative mandate?

6. Is there any statutory provision that explicitly bars the agency's regulatory approach?

7. Are the agency regulations rationally related to the pertinent legislative purpose?

---

[15] Under G.L. c. 30A, § 1(5), regulations are defined as every "rule, regulation, standard or other requirement of general application and future effect . . . adopted by an agency to implement or interpret the law enforced or administered by it." Id. (emphasis added). Rules have "general application" when they apply to an entire population, industry, or whole agency-defined grouping. Rules have "future effect" if they apply to events after promulgation. *See generally* Kneeland Liquor, Inc. v. Alcoholic Beverages Control Comm'n, 345 Mass. 228 (1962). Formal rule making procedures are unnecessary "where the agency is intending to fill in the details or clear up an ambiguity of an established policy, rather than to inaugurate a material change of policy." Massachusetts Gen. Hosp. v. Rate Setting Comm'n, 371 Mass. 705, 707 (1977). *See also* Atlas Distrib. Co. v. Alcoholic Beverages Control Comm'n, 354 Mass. 408, 414 (1968) ("reinterpretation of the reasoning behind the application of existing rules" is not a rule or regulation under M.G.L. c. 30A, § 1(5)).

8. Is there *any* conceivable basis upon which it may be said that the regulation advances the overarching legislative purpose?

9. In challenging a regulation, are you in effect asking the court to second-guess an administrative policy decision that is not facially irrational?

10. In promulgating the regulation, did the agency follow or circumvent the required notice and hearing process?

**Comments on this handout?**

Please email the author at Robert.Quinan@state.ma.us