UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| ROBERT DRAPER, et al. | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 1:14-CV-12471-NMG |
| MARTHA COAKLEY, in her official capacity as ATTORNEY GENERAL OF MASSACHUSETTS | ) ) ) ) | |
| Defendant. | ) ) ) | |

### **DEFENDANT'S REPLY MEMORANDUM ON MOTION TO DISMISS**

This reply memorandum addresses the faulty assertions in Plaintiffs' Opposition regarding organizational standing, constitutional vagueness, the Second Amendment, and abstention. Each issue is dealt with briefly below.

**A. Organizational Standing**

Plaintiffs Second Amendment Foundation ("SAF") and Commonwealth Second Amendment ("Comm2A") failed to establish standing in the Complaint in this action. See Memorandum in Support of Motion to Dismiss ("AG's Memo"), filed Aug. 25, 2014, at 3-4. Neither organization identified an injury to its members[1] or to itself. In an effort to cure this

---

[1] In fact, Comm2A confirmed that it does not even have members, just donors. Opposition to Motion to Dismiss ("Opposition"), filed Sept. 18. 2014, at 6; Bolioli Decl. ¶ 11.

defect, Plaintiffs have now submitted affidavits from these organizations,[2] but the affidavits are insufficient. They do not identify any concrete injury to organization members or to the organizations. They simply note that organization members and supporters have questions about the legality of purchasing and selling Glocks. There is no indication that any specific members actually attempted to purchase Glocks, nor do the affidavits name any members who were dissuaded from selling Glocks because of the handgun sales regulations. Without a specific injury to their members or to themselves, the organizations lack standing.[3] See Summers v. Earth Island Institute, 555 U.S. 488, 498-99 (2009) (the "requirement of naming the affected member has never been dispensed with in light of statistical probabilities"); Kachalsky v. Cacace, 817 F. Supp. 2d 235, 251 (S.D.N.Y. 2011) (SAF failed to identify particular members who had standing), aff'd sub nom. on other grounds Kachalsky v. Cnty. of Westchester, 701 F.3d 81 (2d Cir. 2012).

### B. Vagueness

Plaintiffs' central claims in this litigation are facial and as-applied constitutional vagueness challenges against the load indicator provision of 940 Mass. Code Regs. 16.05(3). See Compl. ¶¶ 2, 68, 73. The Attorney General moved to dismiss both claims under Fed. R. Civ. P. 12(b)(1) and (6). AG's Memo at 6, 8. Plaintiffs' Opposition misapprehends the standards for these constitutional claims, and its arguments do not save the Complaint.

---

[2] Plaintiffs also failed to amend their Complaint to reflect any claims made by SAF or Comm2A.

[3] Plaintiffs also point to their general advocacy work in the Second Amendment arena and argue that this provides them with standing to bring suit. Opposition at 4-6. Cases cited by Plaintiffs on this point are inapplicable. In each of those cases the organization suffered a concrete injury which provided the basis for standing. Simply wanting a forum in which to advocate on policy is insufficient. See Sierra Club v. Morton, 405 U.S. 727, 739-40 (1972) (mere "interest in a problem" is insufficient to confer standing); Hodgkins v. Holder, 677 F. Supp. 2d 202, 206 (D.D.C. 2010) (SAF's voluntary act of teaching constituents about the laws at issue "cannot plausibly be the basis for a claim of constitutional injury").

To defeat a regulation based on facial vagueness, a plaintiff must show that "no set of circumstances exists under which the Act would be valid." United States v. Salerno, 481 U.S. 739, 745 (1987). That is not the case here. See AG's Memo at 7.[4] Plaintiffs respond by citing and quoting extensively from FCC v. Fox Television Stations, Inc., 132 S. Ct. 2307 (2012). Opposition at 12-13. However, Fox addresses an as applied challenge, and Plaintiffs do not discuss the Salerno test, which is the standard for facial claims. Plaintiffs have failed to meet the constitutional standard, and the facial vagueness claim must be dismissed.

Similarly, Plaintiffs provide no support for their as-applied challenge to the regulation and instead make two arguments. The first argument mischaracterizes the Attorney General's reference to various Complaint Exhibits, and the second argument suggests that the Attorney General impermissibly failed to explain *why* she determined that the Gen 3 and 4 Glock pistols fail the regulatory standard. Opposition at 17-20. Neither argument saves Plaintiffs' as-applied claim.

Plaintiffs argue that the Attorney General's references to various Complaint Exhibits in the Motion to Dismiss provide insight into the Attorney General's thought process in rejecting the Glock firearms under 940 Mass. Code Regs. 16.05(3), and that this somehow assists their as-applied challenge. The Complaint Exhibits in question are copies of manuals from non-Glock firearms, as well as a copy of the Glock manual. See AG's Memo at 12-14; Compl. Exs. 39-43. The Attorney General cited to these manuals simply to refute an allegation in the Complaint: Plaintiffs alleged that the Attorney General had approved the Kahr Arms, Heckler & Koch, and Beretta 92-series load indicators, while rejecting a "virtually identical" load indicator from

---

[4] For a discussion of post-Salerno developments in this area of law, see AG's Memo at 6-7, nn. 9-10.

Glock.[5]  Compl. ¶ 69.3 (emphasis omitted).  Indeed, Plaintiffs' own Exhibits show that the load indicators from these different manufacturers are in fact quite different from the Glock load indicator.  AG's Memo at 13-14.[6]  The statements in the Memorandum do not undercut the Attorney General's Motion or supply support for Plaintiffs' position.

The only other defense Plaintiffs have for their as-applied vagueness challenge focuses on the Attorney General's alleged refusal to provide an explanation for *why* the Glock load indicators fail the regulatory standard.  This is not relevant to Plaintiffs' constitutional vagueness challenge.  The vagueness doctrine is concerned with *whether* the Plaintiffs, as people of ordinary intelligence, can determine if Glocks comply with the regulation, not *why* the Attorney General reached her conclusion that they do not.  See United States v. Williams, 553 U.S. 285, 304 (2008).  The Complaint acknowledges that the Attorney General provided Plaintiff-dealers with letters well before the filing of this suit that stated clearly that the Glocks in question do not meet the regulatory standard.  Compl. ¶ 70.1; AG's Memo at 4.  These letters were sufficient to give the dealers fair, actual notice that selling Gen 3 and 4 Glock pistols was prohibited.  See Ward v. Rock Against Racism, 491 U.S. 781, 795-96 (1989); United States v. Zhen Zhou Wu, 711 F.3d 1, 15-16 (1st Cir. 2013).  Thus, there is no as-applied vagueness claim available here.

Plaintiffs attempt to twist the issue—claiming that the Attorney General's decision that the Glock load indicator fails the regulatory requirement was arbitrary and capricious.  But, this is not the test for vagueness.  Plaintiffs are essentially arguing that the application of the regulation is incorrect, rather than that Plaintiffs are uncertain whether the Attorney General will allow them to buy Glocks under the regulation.  The correctness of the Attorney General's

---

[5] Even if it were relevant, any argument or discussion regarding the Attorney General's reasons would be more suitably raised in a motion for summary judgment.

[6] Our discussion also noted that even with Exhibits chosen by the Plaintiffs, one can see how the regulation applied to Glocks.  AG's Memo at 12.

interpretation of the regulation is a state law substantive claim, one that Plaintiffs are not entitled to bring in federal court. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 117 (1984). There is no constitutional vagueness claim here, and the matter should be dismissed.

### C. Second Amendment

Plaintiffs have substantially limited their Second Amendment claim, stating that:

> [W]hether a regulatory "load indicator" requirement is or is not closely or substantially related to an important or compelling government purpose, or what level of scrutiny should be applied to such a regulation, is not the subject of the Complaint and is irrelevant to the issues before this Court.

Opposition at 10. Thus, in this litigation, it is now not necessary to engage in the constitutional scrutiny analysis or to determine whether or not the Second Amendment even reaches safety restrictions that limit dealer sales of Glocks, while allowing the sales of numerous other handguns. As Plaintiffs now cabin it, the Second Amendment claim is wholly derivative of the dealers' vagueness claim, Opposition at 10-11, and must be dismissed if the vagueness claim is dismissed.

Plaintiffs also opine that consumers' Second Amendment rights are "chilled" by the alleged uncertainty surrounding the implementation of the regulation. Opposition at 11. This argument fails to advance Plaintiffs' cause. First, there is no uncertainty surrounding the application of the regulation to Glock pistols. See supra at 4, ¶ 2. Second, Plaintiffs have not cited any authority for the proposition that the "chilling effect" doctrine applies to the Second Amendment. This is a First Amendment doctrine. See, e.g., National Organization for Marriage v. McKee, 649 F.3d 34, 62 (1st Cir. 2011). It has not been expanded into the Second Amendment arena. See Hightower v. City of Boston, 693 F.3d 61, 80-81 (1st Cir. 2012). Cf. United States v. Chester, 628 F.3d 673, 688 (4th Cir. 2010) (Davis, J., concurring) ("[O]verbroad regulations can easily encourage speakers to modify their speech. . . . No analogous arguments obtain in the Second Amendment context. As there can be little doubt that advocates of a robust

individual right to bear arms will continue to challenge *all* firearm regulations, importing the over-breadth doctrine . . . into the Second Amendment context would be inappropriate.").

### D. Abstention

In their Opposition, Plaintiffs claim that the Attorney General's request for abstention is inappropriate because interpretation of the state regulation is "a direct implementation of federal law." Opposition at 21.[7] Plaintiffs reach this conclusion based on a misunderstanding of the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A, which is the source of authority for the load indicator regulation. 940 Mass. Code Regs. 16.00. Plaintiffs point to the text of c. 93A, which notes that regulations under c. 93A "shall not be inconsistent with the rules, regulations and decisions of the Federal Trade Commission and the Federal Courts interpreting the provisions of 15 U.S.C. 45(a)(1) (The Federal Trade Commission Act), as from time to time amended." Mass. Gen. Laws ch. 93A, § 2(c). Regarding suits brought under c. 93A, the Act also notes, "It is the intent of the legislature that . . . in actions brought under [c. 93A], the courts will be guided by the interpretations given by the Federal Trade Commission and the Federal Courts to section 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. 45(a)(1)), as from time to time amended." Mass. Gen. Laws ch. 93A, § 2(b). Based on these provisions, Plaintiffs argue that the key text for the Court to interpret in this case must actually be the Federal Trade Commission Act. See Opposition at 21. This is simply incorrect.

While the state statute does indeed reference the Federal Trade Commission Act in § 2, it merely notes that regulations cannot be "inconsistent"[8] with FTC Act requirements and that

---

[7] Plaintiffs also allege that the state action would be based upon the parallel state due process claim, but the state court's substantive interpretation of the regulation would precede a constitutional interpretation under the doctrine of constitutional avoidance.

[8] Inconsistency has been interpreted to mean actual conflict. See Purity Supreme, Inc. v. Attorney Gen., 380 Mass. 762, 780 (1980) ("States are not forbidden, however, from adopting rules more restrictive than those of the FTC.").

courts interpreting c. 93A in litigation should look to the FTC Act for "guidance." Neither restriction prevents the state court from fashioning its own, more expansive, views of the meaning of c. 93A. Indeed, the definition of unfairness itself, the central pillar of c. 93A, is different under federal and state case law. Compare Gossels v. Fleet Nat. Bank, 453 Mass. 366, 373 (2004), with In the Matter of Int'l Harvester Co., 104 F.T.C. 949 (1984).

The Supreme Judicial Court has noted that c. 93A and its regulations may differ from the FTC Act and its interpretations. The state law may be more restrictive of businesses and handle issues to which the federal statute has not been applied. See Purity Supreme, Inc., 380 Mass. at 780; cf. Mobil Oil Corp v. Attorney Gen., 361 Mass. 401, 411-412 (1972). In fact, the Supreme Judicial Court has held that the Attorney General's regulations may cover new ground specifically on firearms, because the federal consumer protection statutes do not cover these issues. Am. Shooting Sports Council, Inc. v. Attorney Gen., 429 Mass 871, 875-76 (1999). Thus, the regulation here is not a "direct implementation of federal law,"[9] and if interpretation of the regulation is necessary, that is a matter of state law.[10]

---

[9] Opposition at 21.

[10] Plaintiffs also insinuate that the Attorney General is hiding the possibility that it would seek deference to the Attorney General's interpretation should the Plaintiffs bring an action in state court. In fact, as has been true here in this court, the Attorney General does indeed seek deference to its interpretation. The terms in the regulation are straightforward and in common use, and we advocate for the Court to accept this and reject the vagueness challenge. AG's Memo at 8-12. However, if the Court *does* decide that there needs to be judicial interpretation of the language beyond this point, in order, for instance, to limit the construction and avoid the Constitutional issue, that interpretation should be done by a state court rather than a federal court. See AG's Memo at 22-24.

**Conclusion**

For the foregoing reasons and those set forth in the AG's Memo, the Complaint should be dismissed, and, if not dismissed, this Court should exercise abstention.

                                      MARTHA COAKLEY
                                      ATTORNEY GENERAL

                                      /s/ Glenn Kaplan_____
                                      Glenn Kaplan, BBO# 567308
                                      Assistant Attorney General
                                      Office of the Attorney General
                                      One Ashburton Place, 20th Floor
                                      Boston, MA 02108
                                      (617) 727-2200
                                      glenn.kaplan@state.ma.us

Dated:  October 1, 2014

**CERTIFICATE OF SERVICE**

       I hereby certify that this document was filed through the Electronic Case Filing (ECF) system and thus copies will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF); paper copies will be sent to those indicated on the NEF as non registered participants on or before October 1, 2014.

                                      /s/ Glenn Kaplan_____
                                      Glenn Kaplan, BBO# 567308
                                      Assistant Attorney General