# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| (1)  ROBERT DRAPER; | Civil Action No. |
| (2)  ARIEL WEISBERG; | 1:14-CV-12471-NMG |
| (3)  DONNA MAJOR; | |
| (4)  ERIC NOTKIN; | |
| (5)  ROBERT BOUDRIE; | |
| (6)  BRENT CARLTON, | |
| collectively, the "**CONSUMER PLAINTIFFS**", and | |
| (7)  CONCORD ARMORY, LLC; | |
| (8)  PRECISION POINT FIREARMS, LLC; | |
| collectively, the "**DEALER PLAINTIFFS**", and | |
| (9)  SECOND AMENDMENT FOUNDATION, INC., | **PLAINTIFFS' RESPONSE TO DEFENDANT'S REPLY MEMORANDUM** |
| (10) COMMONWEALTH SECOND AMENDMENT, INC. | |
| collectively, the "**ORGANIZATIONS**", and | |
| Plaintiffs | |
| v. | |
| **MARTHA COAKLEY,** | |
| in her official capacity as **ATTORNEY GENERAL OF MASSASCHUSETTS** | |
| Defendant | |

# INTRODUCTION AND SUMMARY OF ARGUMENT

Now that the defendant ATTORNEY GENERAL (hereafter "AG") has extensively and exhaustively briefed this Court on the alleged defects in the PLAINTIFFS' Complaint, the core issue to be determined is whether the Complaint's "combined allegations, taken as true" state a "plausible, not merely a conceivable, case for relief"[1] warranting the continued litigation of this matter for resolution *on the merits*. The answer to this fundamental question is a resounding "yes".

# ARGUMENT

## I. The AG Invents a New Pleading Standard to Challenges the ORGANIZATIONS' Standing

The AG alleges in her REPLY (pp. 1-2) that the ORGANIZATIONS have not "identified … any concrete injury to [their] members… [Their members] simply … have questions about the legality of purchasing and selling Glocks." But the language in the ORGANIZATIONS' respective declarations [SAF Dec., ¶9; COMM2A Dec., ¶13] is to the contrary:

> "Many of [SAF's and COMM2A's members who are] firearms dealers [ ] cannot determine whether they may sell or transfer Gen3/4 Glock pistols to Massachusetts residents… [and SAF's and COMM2A's members who are] Massachusetts residents want to but cannot purchase Gen3/4 Glock pistols because of Massachusetts firearms dealers' inability to determine whether and why or why not such pistols comply or do not comply with the Massachusetts Handgun Sales Regulation."

Relying on a single authority applicable in this Circuit (Summers v. Earth Island Institute, 555 U.S. 488 (2009)), the AG further attacks the ORGANIZATIONS' declarations for "not identif[ying] … any specific members [who] actually attempted to purchase Glocks [or who were] dissuaded from selling Glocks because of the handgun sales regulations." REPLY, p. 2. But that level of specificity is not required at this stage of litigation. Indeed, Ocasio-Hernández v. Fortuño-Burset, 640 F. 3d 1, 14 (1st Cir. 2011) cited the *actual* level of fact specificity required to overcome a *motion to dismiss* in both Iqbal and Twombly:

---

[1]   Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

> [C]f. Iqbal, 129 S.Ct. at 1951 (accepting allegations that the FBI "arrested and detained ***thousands of Arab Muslim men***" pursuant to a policy that was "approved by [the defendants] in discussions in the ***weeks*** after September 11, 2001") (internal quotation marks omitted);  Twombly, 550 U.S. at 550-51, 564-65, 127 S.Ct. 1955 (accepting allegations that defendants "engaged in ***parallel conduct***" and failed to "meaningfully … pursue ***attractive business opportunities***") (alterations omitted) (internal quotation marks omitted)…" [New emphasis in bolded italics.]

It is now understandable why the AG failed to mention in her REPLY that the dicta from Summers upon which she relies—"the 'requirement of naming the affected member has never been dispensed with in light of statistical probabilities'" (Id., 498-499)—concerned the District Court's "***adjudicat[ion] [of] the merits*** of Earth Island's challenges" (Id., p. 492, emphasis in bolded italics), not a *motion to dismiss*.  Nowhere in Summers did the Court require "naming the affected member" at the initial pleading stage, nor is "motion to dismiss" mentioned anywhere in the decision.

The AG also alleges that the OPPOSITION affidavits do not identify "any concrete injury to … the organizations."  REPLY, pp. 1-2.  This, too, is wrong.  SAF and COMM2A both identified specific injuries to themselves.  SAF and COMM2A have spent their own time and their own resources researching and analyzing the very REGULATION at the heart of this lawsuit.  SAF Dec., ¶4.E;  COMM2A Dec, ¶9.  Both organizations have incurred financial loss because of the REGULATION and in sponsoring the current lawsuit.  SAF Dec., ¶5.D;  COMM2A Dec., ¶10.B.

Unlike the AG's invented pleading standard, "the requirement of plausibility on a motion to dismiss under Rule 12(b)(6) 'simply calls for enough fact to raise a *reasonable expectation that discovery will reveal evidence* of the [complained of conduct].'"  Ocasio-Hernández v. Fortuño-Burset, 17, quoting from Twombly, *supra*, at 556 (emphasis added in italics).  The ORGANIZATIONS will comply with requests asking for the identification of their members and/or supporters described in their respective declarations, but the case must progress to discovery.

## II. The AG Contorts the Complaint's Facial and As-Applied Vagueness Claims

The AG asserts that "Plaintiffs' Opposition misapprehends the standards for [facial and as-applied constitutional vagueness] claims."  REPLY, p. 2.  She relies on United States v. Salerno, 481 U.S. 739, 745 (1987) to announce that "To defeat a ***regulation*** based on facial vagueness, a plaintiff must

show that 'no set of circumstances exists under which the Act would be valid.'" REPLY, p. 3, emphasis in bolded italics. But Salerno itself, *in the very same sentence* no less, explicitly states "A facial challenge to a ***legislative Act*** ... must establish that no set of circumstances exists under which the ***Act*** would be valid." Surely even the AG would concede that a legislative branch Act is not the same as an executive branch regulation. But she is wrong even if the Salerno 'no set of circumstances' standard does apply because *all semi-automatic pistols*, including the Gen 3/4 Glock pistols that are the subject of this lawsuit, have "load indicators" inherent in their design—the slide. OPPOSITION, pp. 13-14. Phrased in Salerno language, "Under 'no set of circumstances' can semi-automatic pistols *not* comply with the REGULATION's load indicator requirement." The meaninglessness of the "load indicator" requirement due to the incurably vague "device which plainly indicates" language violates even rational-basis scrutiny since "'rational basis' is not just [a] standard of scrutiny, but the very substance of the constitutional guarantee." District of Columbia v. Heller, 554 U.S. 570, 628 n. 27 (2008). The AG chides the OPPOSITION's reliance on FCC v. Fox Television Stations, Inc., 132 S. Ct. 2307 (2012) which she states "addresses an as applied challenge." REPLY, p. 3. This is irrelevant, as the OPPOSITION made clear (p. 10), as its reliance on FCC v. Fox Television Stations, Inc. was for "the Supreme Court['s] summarize[y] [of] the axiomatic 'void-for-vagueness' precept of due process, which requires that statutes and regulations be sufficiently clear and precise so that persons of ordinary intelligence subject to them can reasonably ascertain what conduct is required and/or what conduct is forbidden."

The REPLY's gripes with the PLAINTIFFS' *as-applied* vagueness challenges only amplify the PLAINTIFFS' facial vagueness claim. The REPLY repeats the Motion to Dismiss [pp. 13-14] contention that "Plaintiffs' own Exhibits show that the load indicators from these different manufacturers are ***in fact*** quite different from the Glock load indicator." REPLY, p. 4, emphasis in bolded italics. This is not a *legal* argument for a motion to dismiss; it is a denial of fact properly made in an Answer. The AG then alleges that it is the "Plaintiffs [who] attempt to twist the issue—claiming that the Attorney General's decision that the Glock load indicator fails the regulatory requirement was arbitrary and capricious [which] is not the test for vagueness." Id. She is right that the test for vagueness is not her arbitrary and capricious "decision that the Glock load indicator fails the regulatory requirement" but her allegation that PLAINTIFFS claimed that this is the test for vagueness is flat-out wrong. The

PLAINTIFFS claimed and continue to vociferously claim that *facially* vague definition of "load indicator" created the circumstances for the "Attorney General[ ] [*as-applied* arbitrary and capricious] decision that the Glock load indicator fails the regulatory requirement."  Stated more succinctly, the AG's arbitrary and capricious decision that Gen3/4 Glock pistols do not comply with the REGULATION's "load indicator" alternative design requirement ***is the result or product of*** the REGULATION's vagueness.

It is understandable, then, that the AG seeks to avoid discovery (e.g. her Motion to Dismiss and Motion to Stay Discovery Pending Resolution of her Motion to Dismiss [Document No. 13 (29 August 2014)]) to not have to answer questions along the lines of:

> Identify in the REGULATION, CMR, MGL, on the Firearms Bureaus' website, on YOUR website or any non-government source referenced in any of these government sources, the *criteria* (i.e. size, shape, location, color, texture, mechanical activeness/passiveness, etc.) for complying with the "load indicator" alternative design requirement of 940 CMR 16.05(3).

The Complaint's "combined allegations, taken as true" much more than adequately state a "plausible, not merely a conceivable, case for relief" on its facial and as-applied void-for-vagueness challenges to the REGULATION's "load indicator" alternative design requirement.

## III.  The AG Hijacks this Lawsuit to Argue Her Own Second Amendment Agenda

While conceding "that 16.05(3) bars sale (sic) … of a particular model of a particular brand of handgun that plaintiffs want to buy…" [Motion to Dismiss, p. 20][2], the AG continues in her REPLY to deflect attention from the CONSUMERS' *actual* claim of the cause of the burden/infringement on their Second Amendment right—the ***unconstitutional vagueness*** in the REGULATION's definition of "load indicator".  The AG attempted in her Motion to Dismiss to transform the CONSUMERS' Second Amendment claim into a controversy over the "the Commonwealth's important interest in promoting public safety" [Id., 16] in requiring "that a firearm sold in-state by a licensed dealer contain those [safety] devices" (Id., pp. 20-21) and concluded that even if it violated the Second Amendment the "load indicator" alternative design requirement withstands intermediate constitutional scrutiny

---

[2]  The AG barred the sale of ***all*** Gen3/4 Glock pistol models.  Complaint, ¶38.

because it is "substantially related to the Attorney General's public safety objective." Id., p. 22. Chanting the same non-issue safety mantra, the AG rejoices in her REPLY over the false assertion that the CONSUMERS have "substantially limited their Second Amendment claim ... [so] it is now not necessary to engage in the constitutional scrutiny analysis ..." REPLY p. 5. She cites out-of-context language from the OPPOSITION [REPLY, p. 5] which, back in its context, exposes her ruse:

> "[T]he Complaint does not challenge the ATTORNEY GENERAL's **authority to promulgate firearm-related regulations** or that the REGULATION's "load indicator" requirement (*independent of its unconstitutionally vague definition*) is unconstitutional ***per se***." OPPOSITION, p. 10 (new emphasis in bolded text; original italics).

Neither of these allegations is the subject of this lawsuit. The AG is flat wrong in asserting that "it is now not necessary to engage in the constitutional scrutiny analysis". Once the Second Amendment is burdened or infringed—as it clearly is since the CONSUMERS have been and are being unjustifiably deprived of firearms in common use, i.e. Gen3/4 Glock pistols (Complaint, ¶34)—"we evaluate the law under some form of means-end scrutiny." Fletcher v. Haas, 851 F.Supp.2d 287, 292 (2012).

If the AG seeks a declaration that a regulatory 'load indicator' requirement "is substantially related to the Commonwealth's important interest in promoting public safety" [Motion to Dismiss, p. 16] and that some specific level of scrutiny should be applied to such a regulation [Id., p. 20] she should file her own lawsuit rather than hijack this case to advance her cause.

The REPLY contends that the Second Amendment cannot have been implicated by "uncertainty surrounding the application of the regulation to Glock pistols" because the AG "provided [DEALERS] with letters ... that stated clearly that the Glocks in question do not meet the regulatory standard." The regurgitation of this constitutionally scornful Motion to Dismiss "because I said so" standard for determining compliance with the REGULATION" is not a Second Amendment issue and is addressed by the OPPOSITION at Section II.B (pp. 6-9).

Relying on two authorities in this Circuit (Hightower v. City of Boston, 639 F.3d 61 (1st Cir. 2012) and Nat'l Org. for Marriage v. McKee, 649 F. 3d 34 (1st Cir. 2011)), the REPLY contends that "Plaintiffs have not cited any authority for the proposition that the 'chilling effect' doctrine applies to the Second Amendment." Id., p. 5. But there is nothing in Nat'l Org. for Marriage *confining* the avoidance of chilling the exercise of a constitutional right to the First Amendment. Hightower did not

even involve a vagueness challenge;  the word "vague" (in any form) appears *once* in the decision.  If that were not enough, a search of federal cases for the term "chilling effect doctrine" referred to in the REPLY yields 24 results *nationwide*, with a 1972 Rhode Island District Court case in which the term is used in passing one time (and which case was reversed by the Court of Appeal that same year) and a single Supreme Court case from 1967 in which the term was used one time in passing, in a footnote.

Hightower is important for a different reason:  the Court of Appeal highlighted the Supreme Court's analysis in Heller, *supra*, of an instance of the application of a facially unconstitutional law:

> "Heller involved a challenge to a 'total ban' on handgun possession in the home, brought by an individual whose attempt to register the handgun was denied based on this ban. Heller, 128 S.Ct. at 2788.  That was not an overbreadth challenge;  Heller's argument was that the total ban was unconstitutional, *including* as applied to his registration attempt."  Id., p. 82, original emphasis.

The PLAINTIFFS' claim of "facial invalidity" of the REGULATION is very similar to that in Heller, but from a subtly different perspective:  because **no one** can reasonably determine what does and does not comply with the words "device which plainly indicates" in the definition of "load indicator", **all** pistols offered for sale or transfer in Massachusetts by **all** handgun purveyors (including the DEALERS herein) are subject to the very same capricious and arbitrary enforcement by the AG, which in turn affects **all** Massachusetts consumers (including the CONSUMERS herein).  The REGULATION is "unconstitutional, *including* as applied to" the Glock pistols which the CONSUMES attempted to purchase, but which the DEALERS would not sell to them because of compliance uncertainty caused by the facially void-for-vagueness REGULATION.

At this early stage of this lawsuit where "plausibility" is the pleading standard (Twombly and Iqbal, *supra*) it borders on preposterous to argue that the direct, non-incidental chilling *impact* of the facially void-for-vagueness REGULATION does not implicate all Massachusetts consumers' (including the CONSUMERS' herein) Second Amendment right to acquire firearms in common use.

## IV.   The AG Misstates the OPPOSITION's Abstention Argument

The AG argues that the PLAINTIFFS "misunderstand" the Mass. Gen. Laws Chapter 93A § 2(c) requirement that "regulations under c. 93A "shall not be inconsistent with the rules, regulations and decisions of the Federal Trade Commission and the Federal Courts interpreting the provisions of 15

U.S.C. 45(a)(1) (The Federal Trade Commission Act)…" REPLY, p. 6.  Citing <u>ASSC, Inc. v. Attorney Gen.</u>, 429 Mass 871, 875-76 (1999), she argues that "the Supreme Judicial Court has held that the Attorney General's regulations may cover new ground specifically on firearms, *because the federal consumer protection statutes do not cover these issues.*"

The AG paints the holding in <u>ASSC</u> with too broad a stroke.  The <u>ASSC</u> Court held that the AG had authority to promulgate the REGULATION "in the interests of consumer protection" (<u>Id.</u>, 877) and "St. 1998, c. 180, 'An Act relative to gun control in the commonwealth' (Act)" which was enacted "*subsequent* to the issuance of the [REGULATION]." <u>Id.</u>, 878-879.  The <u>ASSC</u> Court allowed the implementation of those provisions of the REGULATION "which *exactly or substantially replicate* provisions of the Act…" <u>Id.</u>, 884.  But the Act does ***not*** contain the "load indicator" requirement so the "load indicator" requirement is subsumed by the alternative "regulations under c. 93A "shall not be inconsistent with … the provisions of 15 U.S.C. 45(a)(1) (The Federal Trade Commission Act)…"

Even if, *arguendo*, the REGULATIONS' "load indicator" alternative design requirement is deemed not be the direct implementation of federal law, avoidance of <u>Pullman</u> abstention is nevertheless very much warranted in this case on multiple independent grounds enumerated in the OPPOSITION (pp., 20-25), not the least of which is the federal courts' "virtually unflagging obligation … to exercise the jurisdiction given them.'" <u>Jimenez v. Rodriguez Pagan</u>, 597 F. 3d 18, 27 (1st Cir. 2010).

# CONCLUSION

"A complaint need not allege every fact necessary to win at trial, but need only include sufficient facts to make it '"plausible on its face."'" <u>Rodríguez-Vives v. Puerto Rico Firefighters Corps.</u>, 743 F. 3d 278, 283 (1st Cir. 2014), quoting <u>Ashcroft</u> and <u>Twombly</u>, *supra*.  In this case the COMPLAINT pleads *facts* which go much further than merely making plausible facial and as-applied void-for-vagueness claims against the REGULATION's "load indicator" design requirement.  The OPPOSITION to the AG's Motion to Dismiss further articulates the practical defectiveness of the definition of "load indicator" in explicit detail.  The PLAINTIFFS respectfully submit that the AG's Motion to Dismiss should be denied and the case should be allowed to proceed to resolution on the merits.

Respectfully submitted,

Dated:  17 September 2014.

**ROBERT DRAPER;  ARIEL WEISBERG;  DONNA MAJOR**; **ERIC NOTKIN;  ROBERTY BOUDRIE**; **BRENT CARLTON;  CONCORD ARMORY, LLC**; **PRECISION POINT ARMORY, LLC;  SECOND AMENDMENT FOUNDATION, INC.** and **COMMONWEALTH SECOND AMENDMENT, INC.**

By and through their attorney of record

**/s/ Alexander A. Flig**

Alexander A. Flig, Esq (BBO #669132)
490 Chapman Street, Suite 201
Canton, Massachusetts 02021-2039
Telephone:    (781) 352-7260
Facsimile:    (781) 583-5080
E-Mail:    alex@fliglaw.com

# CERTIFICATE OF SERVICE

I hereby certify that this document was filed through the Electronic Case Filing (ECF) system and thus copies will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF);  paper copies will be sent to those indicated on the NEF as non-registered participants on or before 1 July 2014.

**/s/ Alexander A. Flig**