# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| (1) ROBERT DRAPER; | **Civil Action No.** |
| (2) ARIEL WEISBERG; | 1:14-CV-12471-NMG |
| (3) DONNA MAJOR; | |
| (4) ERIC NOTKIN; | |
| (5) ROBERT BOUDRIE; | |
| (6) BRENT CARLTON, | |
| *collectively, the* "**CONSUMER PLAINTIFFS**", *and* | |
| (7) CONCORD ARMORY, LLC; | |
| (8) PRECISION POINT FIREARMS, LLC; | |
| *collectively, the* "**DEALER PLAINTIFFS**", *and* | |
| (9) SECOND AMENDMENT FOUNDATION, INC., | **PLAINTIFFS' OPPOSITION TO AMICUS' BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS** |
| (10) COMMONWEALTH SECOND AMENDMENT, INC. | |
| *collectively, the* "**ORGANIZATIONS**", *and* | [With Corrected Exhibit] |
| Plaintiffs | |
| v. | |
| **MARTHA COAKLEY,** *in her official capacity as* **ATTORNEY GENERAL OF MASSASCHUSETTS** | |
| Defendant | |

# INTRODUCTION AND SUMMARY OF ARGUMENT

The bulk of Amicus Curiae's, the BRADY CENTER TO PREVENT GUN VIOLENCE (hereafter "BRADY"), Brief in Support of Defendant's Motion to Dismiss (hereafter "AMICUS BRIEF") concerns that are not present in this lawsuit and are therefore irrelevant. Regarding what little in the AMICUS BRIEF is relevant in this case, BRADY's AMICUS BRIEF only highlights and strengthens the PLAINTIFFS' claim that REGULATION's definition "load indicator" is incurably defective.

# ARGUMENT

## I.  BRADY'S AMICUS BRIEF Highlights the REGULATION's Unconstitutionally Vague Definition of "Load Indicator"

BRADY admiringly points to recent (2003) California legislation requiring that "semiautomatic pistols have a 'chamber load indicator,' or a 'device that plainly indicates that a cartridge is in the firing chamber.' Cal. Penal Code §§3200, 16380, 31910." AMICUS BRIEF, p. 8. BRADY omits, however, the text of California's "chamber load indicator" requirement. For ease of reference, it is reproduced side-by-side with its Massachusetts cousin, with their common language highlighted in yellow:

| Massachusetts<br>940 CMR 16.05(1) | California<br>Penal Code §16380 |
|---|---|
| Load indicator: shall mean a device which plainly indicates that a cartridge is in the firing chamber within the handgun. | As used in this part, "chamber load indicator" means a device that plainly indicates that a cartridge is in the firing chamber.  A device satisfies this definition if it is readily visible, has incorporated or adjacent explanatory text or graphics, or both, and is designed and intended to indicate to a reasonably foreseeable adult user of the pistol, without requiring the user to refer to a user's manual or any other resource other than the pistol itself, whether a cartridge is in the firing chamber. |

As is immediately obvious, California's definition of "chamber load indicator" is **_substantially_** more _detailed_ than that of Massachusetts, which provides no restrictions on what this "device which plainly indicates" must be.

---

**PLAINTIFFS' OPPOSITION TO BRADY'S AMICUS BRIEF IN SUPPORT OF THE DEFENDANT'S MOTION TO DISMISS**

## II. The "Background" Section of the AMICUS BRIEF is Mostly Irrelevant to the Issues in This Lawsuit

### A. BRADY's Definition of "Load Indicator" is <u>NOT</u> the Same as, and Only Punctuates, the Vagueness in the REGULATION's Definition of "Load Indicator"

BRADY defines "[a] load indicator, or 'loaded-chamber indicator'" alternatively as:

1. "[A] device that alerts a *gun user* that a cartridge is in the chamber", or
2. "[A]n appendage on the firearm that *presents itself* when a cartridge is loaded in the chamber *or when the action is cocked.*"

AMICUS BRIEF, p. 3-4 (emphasis in italics). "Its sole objective is to quickly and easily communicate to the gun holder that the weapon is loaded." Id., 4.

These AMICUS BRIEF definition(s) of "load indicator" are different from the definition of "load indicator" in the REGULATION at 940 CMR 16.01: "[A] device which plainly indicates that a cartridge is in the firing chamber within the handgun". Specifically, BRADY's first definition "[A] device that alerts a *gun user* that a cartridge is in the chamber" and its stated objective of "communicat[ing] to the *gun holder* that the weapon is loaded" both specify that the *gun user/holder* is the intended recipient of that communication. But the definition of "load indicator" in the REGULATION at issue in *this* lawsuit is silent as *to whom* it is intended to "indicate". Is it really unexpected that the ATTORNEY GENERAL would not use such vagueness to deem an implementation of "load indicator" noncompliant because it does not in her unilateral estimation adequately communicate to *bystanders* that "a cartridge is in the firing chamber…"? After all, persons near an individual handling a pistol are potential victims of that individual's **<u>mishandling</u>** of the firearm, and should be able to alert the *gun user/holder* of the chambered round and/or to take other evasive action to avoid being shot by the **<u>negligent</u>** individual.

BRADY's second definition "[A]n appendage on the firearm that *presents itself* when a cartridge is loaded in the chamber *or when the action is cocked*" is even more distinct from the REGULATION's definition of "load indicator" because it introduces a new functionality that is *not* required by the REGULATION at issue in *this* lawsuit—the indication that "the action is cocked". This second function is senseless by its own terms. The actions of *all* known modern pistols may be cocked *without the*

*presence of a cartridge in the firing chamber*, so a "load indicator" whose "sole objective is to … communicate … that the weapon is *loaded*" would communicate a falsehood when it "*presents itself*" on an *unloaded* pistol.  Pistols use a protruding external hammer or internal striker to initiate the mechanical firing sequence when the trigger is pulled.  No one will seriously argue that the position of an external hammer is not *the* most obvious, intuitive and foolproof way of determining whether "the action is cocked".  The striker of a hammerless pistol is *always* either partially pre-cocked or fully tensioned by design, so the *absence* of an external hammer is itself an indicator that the "action is cocked".  It is dangerous, misleading and confusing to define a "load indicator" as an "appendage on the firearm that presents itself … *when the action is cocked*" for the "sole objective [of communicating] … that the weapon is *loaded*" when the firing chamber is *empty*, a magazine is *not* present, and/or a "load indicator" is *inherent* in the functional design of the pistol.

BRADY's second definition of "load indicator" requires that it be an *active* device, to wit, it "*presents itself* when a cartridge is loaded in the chamber".  Though equally as vague in *how* this "appendage … *presents* itself", this BRADY definition excludes *passive* "load indicator" designs, i.e. a small hole at the base of the firing chamber through which the rim of a cartridge case may be seen under certain conditions if one is present.  Oddly, BRADY's second definition of "load indicator" contradicts her policy of *apparently* permitting the passive hole-at-the-base-of-the-firing-chamber "load indicator" design.[1]  But even that is unclear because the defendant ATTORNEY GENERAL's non-objection to the active extractor-based "load indicator" design used by Kahr Arms, Heckler & Koch, and Beretta 92-series pistols—while rejecting the virtually identical "load indicator" design implemented on Gen3/4 Glock pistols—is not to be construed or mistaken as her tacit approval of those pistols.  REPLY, p. 3.[2]    Indeed, the defendant ATTORNEY GENERAL asserts that she does not even have to

---

[1]    The defendant ATTORNEY GENERAL has not initiated any enforcement actions, nor has she issued any decrees against the various pistol models currently sold in Massachusetts using this passive "load indicator" design.

[2]    In her Motion to Dismiss and Reply memoranda, the defendant ATTORNEY GENERAL has, in not so many words, declared—and as her incurably vague definition of "load indicator" gives her license to do—that she has absolute, exclusive and indisputable authority to decree at whim that any pistol sold or transferred into Massachusetts does not comply with the REGULATION's definition of "load indicator".  The defendant ATTORNEY GENERAL mocks the PLAINTIFFS' allegation that her ban of Gen3/4 Glock pistols is capricious and arbitrary by contrasting her *not* having objected "to certain pistols that [PLAINTIFFS] claim contain 'virtually identical' safety devices to those on the Glock Generations 3 and 4 handguns."  [Motion to Dismiss, p. 13.]  She explains that "Opining that the Attorney General 'has not objected' to certain pistols is not the same as alleging that the Attorney General has

provide any guidance, information or limiting instructions about her definition of "load indicator" because "administrative agencies do not have an enforceable obligation to perform this sort of advisory mission, for good and practical reasons."  Motion to Dismiss, p. 14, citing Crooker v. Magaw, 41 F. Supp. 2d 87, 92 (D. Mass. 1999).³  Even BRADY's unconstitutionally vague definitions of "load indicator" are more informative than the REGULATIONS' "device which plainly indicates" language.

### B. The Historical Purpose of "Load Indicators" is NOT Relevant to Any of the Issues in This Lawsuit

The present lawsuit revolves around the singular issue of the vagueness in the REGULATION's definition of "load indicator".  The alleged historical purpose of "load indicator" and the evolvement of that purpose into modern times is not an issue in this lawsuit and need not be addressed herein.

### C. The Effectiveness/Non-Effectiveness of "Load Indicators" is NOT Relevant to Any of the Issues in This Lawsuit

Neither the Complaint nor the Opposition to the defendant ATTORNEY GENERAL's Motion to Dismiss, nor the PLAINTIFFS' Sur-Reply to the defendant ATTORNEY GENERAL's Reply to the PLAINTIFFS' Opposition, challenge the effectiveness or non-effectiveness of "load indicators" in preventing accidental discharges.  This is a red herring intended to confuse the simple issue herein: does the REGULATION's definition of "load indicator" comply with the constitutional requirement that

---

either ***approved them or given any indication that they meet the load indicator standards***." Id., 13-14 (emphasis in bolded italics).  Thus, more than 16 years of silence regarding non-Glock pistols' compliance with the "load indicator" alternative design requirement is expressly ***not*** to be taken as the defendant ATTORNEY GENERAL having "approved them or given any indication that they meet the load indicator standards."  Stated differently, *no pistol model in Massachusetts* is safe from a *future* decree that it *never met* the "load indicator" alternative design requirement and may no longer be sold in or transferred into Massachusetts.

³  In context (again), this authority does *not* stand for the principle in the cited language *as it applies to the facts in the instant lawsuit*: "[The situation] … before the court now [is one in which] the plaintiff merely expresses a desire to take some action in the future and wishes to know whether he will be breaking the law."  Crooker v. Magaw, 41 F. Supp. 2d 87, 92 (D. Mass. 1999).  In *this* lawsuit, the defendant ATTORNEY GENERAL already decreed that Gen3/4 Glock pistols do not comply with her "because I said so" standard.  Incapable of discerning from the text of the REGULATION and the inconsistency of decreeing Glock "load indicators" non-compliant while other pistols employing virtually identical "load indicators" *apparently* compliant, PLAINTIFFS are entitled to understand *why* the sought pistols do not comply—the DEALERS may find a way to comply, i.e. by modifying Gen3/4 Glock pistols.  Much more importantly, *all* Massachusetts "handgun purveyors", *including* DEALERs herein, must be afforded a reasonable way of discerning whether *any* pistol make and model is permissible for sale of transfer in Massachusetts.

---

**PLAINTIFFS' OPPOSITION TO BRADY'S AMICUS BRIEF IN SUPPORT OF THE DEFENDANT'S MOTION TO DISMISS**

it be sufficiently clear to provide reasonable notice of what is required and what is forbidden by the "load indicator" alternative design requirement to those who are subject to the REGULATION.

## III. BRADY's Argument that the Second Amendment Does Not Enshrine a Right to Unsafe Guns is Irrelevant to the Issues in This Lawsuit

Not unlike the defendant ATTORNEY GENERAL who it endorses, BRADY supports its AMICUS BRIEF's arguments with non-existent holdings and out-of-context dicta in the authorities it cites. Its AMICUS BRIEF opening sentence to the Argument section, BRADY asserts that "The Second Amendment protects a citizen's right to keep and bear arms for the *limited* purpose of self-defense." That is a rather bold assertion from the *actual* language in District of Columbia v. Heller, 554 U.S. 570, 599 (2008) upon which it relies:

> "It is [ ] entirely sensible that the Second Amendment's prefatory clause announces the purpose for which the right was codified: to prevent elimination of the militia… [T]he prologue … only show[s] that self-defense had little to do with the right's *codification*; it was the *central component* of the right itself." [Original emphasis.]

The Court can search but will not find any holding or language in Heller *limiting* the Second Amendment's guarantee of the right to keep and bear arms to "the core lawful purpose of self-defense." Id., 630. Nor will the court find in the canonical language of the Second Amendment to which BRADY also cites to support its limitation-to-self-defense argument, any *limits* on its purpose *at all*: "A WELL REGULATED MILITIA, BEING NECESSARY TO THE SECURITY OF A FREE STATE, THE RIGHT OF THE PEOPLE TO KEEP AND BEAR ARMS, SHALL NOT BE INFRINGED."

Exactly as the defendant ATTORNEY GENERAL argued in her Motion to Dismiss and then in her Reply to the PLAINTIFFS' Opposition thereto, BRADY argues that "laws that do not implicate the central self-defense concern of the Second Amendment may be more easily justified." Fletcher v. Haas, 851 F. Supp. 2d 287, 302 (D. Mass. 2012). This irrelevant straw man argument attempts to reformulate the PLAINTIFFS' contention regarding the *unconstitutional vagueness in the definition* of the REGULATION's "load indicator" alternative design requirement into a challenge of the "load indicator" alternative design requirement ***per se***. For judicial economy, PLAINTIFFS submit that this

issue was adequately addressed in both their Opposition to the Attorney General's Motion to Dismiss and their Sur-Reply to the defendant ATTORNEY GENERAL's Reply Memorandum to their Opposition to her Motion to Dismiss.

## IV. BRADY Argues Disingenuously that the REGULATION Does not Implicate the Second Amendment

BRADY argues that Plaintiffs "concede [that] the regulation under attack in this litigation does not prevent Massachusetts residents from purchasing ***a*** handgun to defend themselves and their families." AMICUS BRIEF, p. 10 (emphasis in bolded italics). Extended to its natural conclusion, BRADY argues that as long as Massachusetts residents may purchase ***a*** handgun, restricting the selection to even a single model would not implicate the Second Amendment because it would "not prevent Massachusetts residents from purchasing ***a*** handgun to defend themselves and their families." Who would determine what type of handgun that would be (i.e. pistol or revolver) and its design? A muzzle-loading single shot flintlock pistol is a handgun. Limiting ownership of firearms to one per person does not violate BRADY's logic. As extreme as this initially sounds, it is not that far from what BRADY actually suggests: "The load-indicator regulation is [ ] a far cry from laws that '*totally* ban[] handgun possession in the home,' which are the *only* laws that the Supreme Court has found inconsistent with the Second Amendment. Heller, 554 U.S. at 628." AMICUS BRIEF, p. 11 (emphasis in italics). BRADY omits exactly where on the continuum of firearms—from the "dangerous or unusual weapons" which the Supreme Court forbade in Heller, *supra*, to muzzle-loading single shot flintlock pistols, REGULATION is permissible without burdening or infringing on the Second Amendment.

## V. Whether the REGULATION's "Load Indicator" Alternative Design Requirement is Substantially Related to the Government's Interest in Protecting its Citizens is <u>Irrelevant to the Issues in This Lawsuit</u>

Parroting the defendant ATTORNEY GENERAL's Motion to Dismiss, BRADY argues that even if the REGULATION's "load indicator" alternative design requirement burdens or infringes the Second

Amendment rights of Massachusetts residents (including the CONSUMERS herein) it should nevertheless not be struck because it is substantially related to the "significant government interest" of protecting its citizens. AMICUS BRIEF, p. 12-14. Like the defendant ATTORNEY GENERAL, BRADY tries to hijack this lawsuit to argue its own anti-Second Amendment agenda.

Neither the Complaint nor the Opposition to the defendant ATTORNEY GENERAL's Motion to Dismiss, nor the PLAINTIFFS' Sur-Reply to the defendant ATTORNEY GENERAL's Reply to the PLAINTIFFS' Opposition, questions whether a "load indicator" alternative design requirement "passes constitutional muster because it is substantially related to a significant government interest." Id., 12. That could be an interesting issue to debate in future lawsuit *if the PLAINTIFFS could actually understood **what** the REGULATION requires* through its unconstitutionally vague definition of "load indicator"—or rather, if the REGULATION's definition of "load indicator" is **capable of being understood**. The PLAINTIFFS addressed this issue in the OPPOSITION at Section III.A., p. 12-20. The CONSUMER's Second Amendment right is infringed as a *product of* the REGULATION's violation of the DEALERS' right to due process under the Fourteenth Amendment.

## CONCLUSION

For all of the foregoing reasons, PLAINTIFFS respectfully submit that BRADY's AMICUS BRIEF adds nothing to the instant lawsuit, only confuses the issues, and should be disregarded in its entirety.

///

///

///

///

**PLAINTIFFS' OPPOSITION TO BRADY'S AMICUS BRIEF IN SUPPORT OF THE DEFENDANT'S MOTION TO DISMISS**

Respectfully submitted,

Dated:  31 October 2014.

**ROBERT DRAPER**;  **ARIEL WEISBERG**;  **DONNA MAJOR**;  **ERIC NOTKIN**;  **ROBERTY BOUDRIE**; **BRENT CARLTON**;  **CONCORD ARMORY, LLC**; **PRECISION POINT ARMORY, LLC**;  **SECOND AMENDMENT FOUNDATION, INC.** and **COMMONWEALTH SECOND AMENDMENT, INC.**

By and through their attorney of record

**/s/ Alexander A. Flig**

Alexander A. Flig, Esq (BBO #669132)
490 Chapman Street, Suite 201
Canton, Massachusetts 02021-2039
Telephone:    (781) 352-7260
Facsimile:    (781) 583-5080
E-Mail:    alex@fliglaw.com

# CERTIFICATE OF SERVICE

I hereby certify that this document was filed through the Electronic Case Filing (ECF) system and thus copies will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF);  paper copies will be sent to those indicated on the NEF as non-registered participants on or before 1 July 2014.

**/s/ Alexander A. Flig**

# Exhibit "A"

Webpage Screenshot

Case 1:14-cv-12471-NMG  Document 39-1  Filed 11/13/14  Page 11 of 11



skip to content | home | accessibility | FAQ | feedback | login

**California Legislative Information**

Quick Search: Bill Number [___] go

Bill Information | California Law | My Subscriptions | My Favorites

California Law >> Code Search >> Code Section

Code: PEN   Section: 16380.   [Search]

Code Search | Text Search

Up^    << Previous    Next >>    cross-reference chaptered bills    Add To My Favorites    [Highlight]

**PENAL CODE - PEN**
  **PART 6. CONTROL OF DEADLY WEAPONS [16000 - 34370]** ( Part 6 added by Stats. 2010, Ch. 711, Sec. 6. )
    **TITLE 1. PRELIMINARY PROVISIONS [16000 - 17360]** ( Title 1 added by Stats. 2010, Ch. 711, Sec. 6. )
      **DIVISION 2. DEFINITIONS [16100 - 17360]** ( Division 2 added by Stats. 2010, Ch. 711, Sec. 6. )

**16380.** As used in this part, "chamber load indicator" means a device that plainly indicates that a cartridge is in the firing chamber. A device satisfies this definition if it is readily visible, has incorporated or adjacent explanatory text or graphics, or both, and is designed and intended to indicate to a reasonably foreseeable adult user of the pistol, without requiring the user to refer to a user's manual or any other resource other than the pistol itself, whether a cartridge is in the firing chamber.

(Added by Stats. 2010, Ch. 711, Sec. 6. Effective January 1, 2011. Operative January 1, 2012, by Sec. 10 of Ch. 711.)

http://leginfo.legislature.ca.gov/faces/codes_displaySection.xhtml?lawCode=PEN&sectionNum=16380. Tue Oct 28 2014 18:11:18 GMT-0400 (Eastern Daylight Time)